HOOVER <i>v.</i> HOOVER.

Both the estate and the person of a devisee of land charged with legacies, become liable therefor, by an acceptance of the devise.

And it is immaterial that there are debts of the testator unprovided for in his will, which the land is liable for.

A testamentary charge on land in favour of a legatee, is in the nature of a demonstrative and specific legacy.

In Pennsylvania, devised lands being charged by law with payment of debts, the estate of the devisee is liable for that purpose before legacies which are charged upon it.

APPEAL from the Orphan's Court of Cumberland.

*June* 1. The petition (or bill) stated, that John Hoover devised a tract of land to his son David, yielding and paying out of the same $7250, in instalments of $700; the first payable in six months after testator's decease, the second in eighteen months thereafter, and the remaining instalments yearly. Out of the first instalment a legacy of $500 was given to the petitioner. Of the residue, portions were given to the testator's other children, and the amount

undisposed of, with the residue of the estate, was given equally among all the children. The petition then averred the acceptance of the land devised, prayed an order of sale, &c.

The answer of the devisee admitted the will, of which he and another were executors, and averred a settlement of an administration account, by which it appeared he had paid debts of the estate beyond the assets $1683 63, and that debts yet remained unpaid, which, with that sum, amounted to $4453. It further averred there were no assets nor any annual payment due out of the land which respondent could apply to the payment of legacies. That testator had made no provision by his will for payment of his debts, and that the estate would not be sufficient to pay all the legacies when the assets came to hand, but that they must abate ratably.

The complainant demurred, and the court dismissed the bill.

*Graham* and *Reed,* for appellants.—The will of John Hoover indicated an intention on the part of testator to bestow his bounty equally upon all his children. That he put an estimate upon his whole estate, computed the amount of his debts, and set apart a specific fund for the payment of' legacies, and left the residue of the estate in the hands of David, the appellee, which, with the personal estate, was supposed to be sufficient to pay all the debts and legacies, and still leave David upon an equality with the other legatees. The legacies are payable out of the land, by David, to the legatees. He had his option to accept the estate devised to him, on the conditions expressed in the will, or to refuse. If he accepted, he became instantly bound to perform the conditions, or forfeit his right. He did enter, and besides holding *on condition* of paying the legacies, he incurred a *personal responsibility* to pay them, which might have been enforced by action of debt or assumpsit. Whether the testator was mistaken or not in the amount of his debts, cannot be known; and if he was, it is of no consequence. It was for David to determine whether he would take the estate; with the encumbrances, or not. It is too late now to make his election. The legacy to Michael, being a portion of a specific fund set apart for the purpose, may be considered *specific,* or it may be considered *demonstrative.* In neither event will it abate. The rule is denied that the debts are first to be paid, and that the personal estate is the first fund applicable for the purpose; and if insufficient, that general legacies are next to be applied. But this will cannot be executed at all by an application of these principles to it. David had his portion to an unknown amount left in the

estate after payment of legacies. It is urged on the part of the appellees, that, as David has been compelled to pay debts to an amount far beyond the personal estate, the deficiency must be made up out of the legacies. In this way David would receive the whole bounty of the testator intended for him, and the legatees not one-half. This would defeat the manifest intention of the will. But there are no *data* by which to equalize the *deficiency* between David and the legatees, for David's amount is unknown. The amount of the portion left in the estate for him, is not specified. No *pro rata* deduction can, therefore, be made, or the will of the testator cannot be carried into effect. The legacies are in the nature of an equitable mortgage, charged upon the real estate, and a devise of mortgaged premises passes the estate to the devisee *cum onere.*

The legacies are directly charged upon the land in favour of the legatees. The $7250, the fund set apart for this payment, was not to be paid to the executors, but by David, as devisee, to the legatees. He was an executor; he could not pay to himself. John, one of the legatees, was also an executor. He was to receive, not to pay. The plain meaning of the will is, that David, the devisee, by reason of the bounty of the testator to him, is to pay directly to the legatees the respective sums specified. The following authorities establish the different propositions: Ram. on Assets, 127.; 8 Law Lib. 66, 67, 73, 74, 86, 87, 88, 98; 1 Pow. on Dev. 252, 195, n. 7; 2 Pow. on Dev. 251, 671; 21 Law Lib. 114, in note; 22 Law Lib. 133, 359; 2 Yeates, 54; 2 Dallas, 243; Lobach's case, 6 Watts, 167; 1 Watts, 266, 267.

*Biddle* and *Watts,* contrà.—The authorities cited on the other side are to the effect, that a devisee of a *mortgaged* estate is not entitled to be exonerated out of the estate specifically bequeathed, but the devisee takes the land *cum onere,* and must discharge the mortgage. The reason of this is, that the testator himself made the mortgaged property a special fund for the payment of the mortgage money; Rider *v.* Wager, 2 P. Wms. 335. The rule is otherwise where the estate devised is *not mortgaged,* as is shown in 2 Powell on Devises, 667, 668, where, in the order of the application of the several funds to the payment of debts, it is laid down that real estate devised, whether in terms general or specific, is the last fund to be resorted to. General, pecuniary and specific legacies must first be exhausted before the devisee of the land can be called on to contribute. The fact of the debts in this case being

judgments in the testator's lifetime, and a lien on his lands does not alter this rule, as the testator did not mortgage his real estate, or in any way make it a special fund for the payment of these judgments; on the contrary, had executions issued on them, his personal. estate would first have been taken in execution. Not so, however, with a mortgage, recourse there being at once had to the land pledged. But under the will, David Hoover is a purchaser of his father's land for $7250, and this consideration money is the only burden that is or can be attached to the purchase; there is no other charge or condition annexed. The devise is in effect a sale to David for $7250, and the money stands in the place of the land to pay legacies and debts, as circumstances may require; Arnold *v.* Chapman, 1 Ves. 108; 2 Powell on Devises, 45. It would be monstrous to say that the purchaser of the real estate should pay the debts of the testator in addition to the price of the land, in order to leave a fund for the legatees. Again: if the land devised to David is worth. $10,000 instead of $7250, the price fixed by the testator, the difference in value is a devise of land to that amount for the benefit of David, and could not, according to the rule in Powell, be resorted to for the payment of debts until the whole of the specific legacies had first been applied to that purpose.

*June* 9. BELL, J.—It is admitted by the defendant's answer, as indeed it could not, with any show of reason, have been denied, that the sum of $7250, bequeathed by the testator to be paid to his children in the proportions and at the time mentioned in his will, is a charge upon the lands devised to David. It is also admitted that the latter, in pursuance of the will, took possession of the lands devised, and still continues in the seisin and occupation of them. Upon these facts alone, it is not to be disputed that, having taken the land *cum onere*, he is bound to pay to his brothers and sisters their several legacies as they respectively fall due, and this liability may be enforced by a proceeding in the Orphan's Court, such as has been instituted here, under the statute giving the specific remedy. By the terms of this will, not only is a lien created. on the land devised, but the devisee, immediately upon his acceptance of it, became personally responsible to the legatees for the amount of their respective legacies. As is said in Glen *v.* Fisher, 6 Johns. C. R. 33, a case which cannot, in this particular, be distinguished from the present, by acceptance, the devisee becomes absolutely bound for the legacies, and cannot set up any condition

precedent to it, for the law makes none. He who accepts a benefit under a will, must conform to all its provisions, and renounce every right inconsistent with them. To the same effect is the doctrine of our own case of Lobach, 6 Watts, 167, which, in its leading features, is also very similar to the present. The testator, said Mr. Justice Kennedy, in delivering the opinion of the court, not only intended to charge the land, but to make it a personal charge on the devisee, and he became personally liable on taking possession under the will. These distinct liabilities are illustrated by the consideration that the estate given to David may be treated as an estate on condition. In a will, no precise form of words is necessary to create a condition. Any expressions denoting such an intention will have that effect. Thus a devise to A., " he paying," or " he to pay £500 in one year after my decease," would, it is said, be a condition for the breach of which the heir might enter; 2 Powell on Devises, 251; Barnardiston *v.* Fane, 2 Vern. 366; S. C. 1 Eq. Ca. Abr. 109, pl. 8. But in such a case equity would afford relief against the forfeiture, on payment of principal, interest and costs; 1 Powell on Devises, 195, n. 7; and it is not to be doubted that, on application of the party entitled to payment out of the land devised, the devisee would be compelled to perform the condition, on the principle that no man shall be allowed to disappoint a will under which he takes a benefit; (*Per* Eyre, Chief Baron, in Blake *v.* Banbery, 1 Ves. jun. 523.) But the defendant, David Hoover, endeavours to escape from the responsibility he has thus assumed, by showing that, although five instalments of $700 each were due, and payable under the will of the testator, at the time the plaintiff filed his bill in the Orphan's Court, these were not sufficient in amount to cover a balance of debts remaining due from the testator's estate, after exhausting the personal estate and other lands not devised; and, therefore, he avers " there are no assets of the estate of the said John Hoover, deceased, in his hands, which he could apply to the payment of the legacy of Michael Hoover, nor is there any annual payment due and payable out of the land so as aforesaid devised to him, which he can legally and safely apply to the payment of the said legacy or any part thereof." This averment proceeds upon the notion that, although the aggregate sum charged on the land, and which, as we have seen, has become the personal debt of the devisee, is directed to be paid in ascertained legacies and by way of residuary bequest to the other children of the testator, yet that is subject to be first appropriated in payment of the debts due from his estate, leaving only any

balance that may remain, applicable in satisfaction of the legacies, *pro rata.* This view seems to have been adopted by the Orphan's Court, and to have led it to the support of the defendant's answer by a dismissal of the plaintiff's bill with costs. But in this, we are of opinion the court was clearly wrong. Viewed as a personal liability attaching upon the devisee, there can be no pretence whatever to say the plaintiff's legacy is liable to be defeated by the fact that the testator died indebted in a larger amount than his personal estate was sufficient to discharge. This legacy is made directly payable by the devisee to the legatee, without the intervention of the executor, who alone has to do with the payment of his testator's debts. That the devisee was also executor can make no difference, for the land devised did not pass to him in that character, but as devisee, and his acceptance of it immediately raised a promise to pay the sums charged upon it, irrespective of the testator's debts. It may be true the latter acted upon a mistake as to the amount of these debts, and that a consequence will be a diminution of the benefit intended to be conferred by him on his devisee; still this acceptance by the latter of the thing devised, subject to the burden expressly imposed on it, closes his mouth from averring, as a defence to the plaintiff's claim, that there are no assets of the estate of the deceased in his hands applicable to the payment of the legacy. The right of the legatees to claim payment at the hands of the devisee, does not rest upon assets, as such, in his possession, but upon his liability as devisee, holding under the same will that gives birth to their interests.

But if we put out of view the personal responsibilities of the devisee, and treat this as a case in which a chancellor would marshal assets as between creditors, devisees, and legatees, it will be found the defence set up here is equally unavailing. In this aspect, the legacies must be regarded as demonstrative, and, in some sort, partaking of the nature of specific legacies, as charged upon a particular fund specially appropriated to their payment; Ward on Leg. 21. This fund is the devised land which, it is not denied, is sufficient for the payment of the balance of the testator's debts, and the legacies bequeathed. The established order of the application of the several funds liable to the payment of debts is definitively settled by adjudged cases, and is thus generally stated by text writers upon this subject. 1. The general personal estate not expressly, or by implication, exempted. 2. Lands expressly devised to pay debts. 3. Estates descended to the heir. 4. Devised lands, charged with the payment of debts generally, whether

devised in terms general or specific, (every devise of land being in its nature specific.) 5. General pecuniary legacies, *pro rata.* 6. Specific legacies, *pro rata.* 7. Real estate devised, whether in terms. general or specific; 2 Powell on Dev. 667, 668, and cases there cited. In this instance the first and third class of assets have been exhausted, without fully satisfying the debts; and this testator did not *expressly* devise any lands for their payment. Nor did he charge any of his lands with the payment of his debts generally, so far as we are enabled to ascertain from the paper-book, which, however, does not set out the whole of his will. But with us, all the lands of a decedent, whether descended or devised, are, by law, charged with the payment of his debts, and, as is intimated in Manning *v.* Spooner, 3 Ves. 118, and expressly said by Mr. Justice Rogers, in Walker's Estate, 3 Rawle, 241, a case also turning upon the mode of marshalling assets in payment of debts; every testator is presumed to know the law of the country in which he lives, and to make his will in reference to it; and he adds, that though a clause in wills, charging the testator's estates with the payment of his debts, is usual, it is by no means necessary, for the estate is equally bound without such direction, and in the order indicated. Accordingly, in that case, personal property bequeathed to the widow of the testator was decreed to be subject to the payment of debts, before descended real estate could be called on. It does not, however, follow from this, that when no other fund than the personal estate is provided for the payment of legacies, and this is swept away by the creditors of the testator, the legatees are entitled to call upon the lands devised to replace the amount abstracted from the personalty, for this would be in contravention of the order of application I have already stated. The right to do so seems to depend upon an expression of intention by the testator to charge the devised lands with his debts, in which case the assets will be marshalled in favour of pecuniary and specific legatees; lands so charged being applicable before pecuniary or specific legacies. But the case is very different where the burden of paying the legacies is specifically imposed on the devised land. The devisee then takes it so subject, and, in Pennsylvania, on failure of the prior funds, also onerated with the debts. The testator says he shall pay the legacies, and the law says he shall pay the debts. It is, in this respect, like a devise of mortgaged lands, charged by the testator with the payment of a sum certain, partly applicable to the discharge of legacies given to other children of the testator. When construing such a devise, C. J. McKean, as the organ of the court,

observed, "It appears to have been the intention of the testator that the legacies, specific and pecuniary, should be paid, as well as that the devise of the real estate should take effect; and, if practicable, the assets should be so marshalled that the testator's intention in the whole should be carried into execution;" and it was, accordingly, decided that the specific and pecuniary legacies bequeathed to the children, ought not to be brought in ease of the particular lands mortgaged, for the devisee of the real estate must take it *cum onere*, that is, subject to the mortgage, unless the residue of the personal estate be sufficient to discharge it. In this case, too, it was apparent the testator had miscalculated the amount of his debts, a circumstance which is never allowed to defeat legatees, where a sufficient fund still remains; Ruston's Ex'ors *v.* Ruston, 2 Dall. 243. A similar principle was announced in the case of Davies *v.* Topp, 2 Bro. C. C. 259, in note, where one seised in fee of considerable real estate, subject to a mortgage, by his will gave to his sister an annuity, during her life, to be paid by the person who should be seised of his real estate, under his will, and also several pecuniary legacies, the payment of which, together with his debts, he charged upon all his real and personal estate, which he devised, subject thereto, to his nephew in tail male; and to the same nephew he gave all the rest of his personal estate, subject to his debts, legacies, and funeral expenses, and appointed him executor of the will. Upon a bill brought for an account and application of the personal estate, not specifically bequeathed, in payment of debts and legacies, and in case the personal estate should not be sufficient, to have the deficiency raised by a sale or mortgage of a competent part of the real estate, the Master of the Rolls decreed, and this decree was afterwards affirmed by Lord Thurlow on appeal, that the personal estate not specifically bequeathed should be first applied in payment of debts, funeral expenses, and legacies, but in case the personal estate should be insufficient for the payment of debts, the balance due the mortgagee and other specialty creditors to be raised by mortgage or sale of certain freehold estates, acquired of the testator after making his will, and which had descended to his heirs at law; and in case these funds should not be sufficient for the payment of debts and legacies, the deficiency to be made good out of the real estate devised by the will, charged with the payment of the testator's debts and legacies. In these, and similar instances, a demonstrative legacy is not suffered to fail while the fund charged with its payment holds good for the purpose. After debts, these have the primary claim upon the fund,

and where that fund is land devised, the devisee is, if necessary, to be postponed. But here the devisee claims to apply the legacies in ease of the land upon which they are charged, which, as we have seen, cannot be done. It follows that, under the facts disclosed, the Orphan's Court erred in dismissing the bill of Michael Hoover, the legatee, and its decree must, therefore, be reversed.

Decree reversed, and it is ordered that the record be remitted to the Orphan's Court, with directions to proceed.