# Baker's Appeal.

59　313
170　591
59　313
178　289

1. A devise was "I direct that my son Joseph is to have my farm at my death for $6000; upon payment of the same as hereinafter stated, I direct my executors shall make him a deed for the same. $3000 to be secured in said farm, the interest to be paid to my wife (during widowhood), the first $3000 * * to be divided between my children * * the $3000 remaining in the farm also to be equally divided between my children at the death of my wife * * my son Joseph claiming an equal share in the $6000. * * Joseph to be allowed a reasonable time to pay the heirs their legacies, with interest from my death, should he accept or purchase the farm upon the terms," &c. If he refused to purchase the executors to sell the land. Held, that the legacies were a charge on the land.

2. The "reasonable time" for payment by the devisee, was one year from the death of the testator.

3. The will was dated August 17th 1865, and the $6000 was to be paid "in gold or its equivalent in lawful money of the United States." Held, that the payments were to be made at the commercial value of gold when they respectively fell due.

4. In proceedings in the Orphans' Court to enforce payment of the legacies the executors should be made parties, and all the legatees may join in one petition.

5. Granting an issue under the 55th section of the Act of March 29th 1832 (Orphans' Courts), is in the discretion of the Orphans' Court.

October 31st 1868. Before READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.; THOMPSON, C. J., absent.

Appeal from the Orphans' Court of *Westmoreland county:* No. 129, to October and November Term 1868.

To November Term 1867 of the Orphans' Court of Westmore-

land county, the petition of John W. Baker, Eli Ferguson and Martha J. his wife, Henry W. Baker, Robert Osborn and Mary L. his wife, Samuel Singleton and Emily C. his wife (H. W. Baker and Mitchell and wife signing by their solicitors), was presented to the court.

The petition set out that the complainants,—except the husbands,—were six of the legatees under the will of Henry Baker, deceased, dated August 17th, and proved November 28th 1865, by which the testator amongst other things ordered as follows:—

"I direct that my aforesaid son, Joseph E. Baker, is to have my farm upon which I now reside at my death, for six thousand dollars in gold, or its equivalent in lawful money of the United States;—upon payment of the same as hereinafter stated, I direct that my said executors shall make him a deed for the same. Three thousand dollars of which is to be secured in said farm, and the interest thereof paid to my wife Martha annually, during her life, or so long as she remains my widow. The first three thousand dollars in gold, or its equivalent, as aforesaid, to be equally divided between my children before mentioned, share and share alike; and the balance of the purchase-money, to wit, the three thousand remaining in the farm also to be equally divided between my aforesaid children, at the time of the death of my said wife, should she remain my widow until that time, share and share alike; my said son Joseph E. Baker claiming an equal share with the aforesaid heirs, in the six thousand dollars; or in other words, he is to have a credit for his equal share in the six thousand dollars."

The will further provided that the devisee should " be allowed a fair and reasonable time to pay the several heirs their respective shares with interest from the time of my death, should he accept or purchase my farm upon the terms set forth in this my will. Should he refuse to purchase or accept my farm, then I direct my executors as soon as convenient after my decease to sell and convey the same."

Joseph E. Baker, on 30th December 1865, accepted the devise and entered into possession of the said described tract of land.

The complainants prayed that a citation might issue to Joseph E. Baker to answer the bill, and that a decree be made for " the payment of said legacies, and, also, that he enter sufficient security to pay the widow the interest annually on the sum bequeathed to her during her natural life, and at her death pay to the complainants their respective interests in the same, out of said described real estate, and in default of payment thereof, that the same be paid by the sale of the same."

The executors of the will were not made parties to the proceedings.

The defendant, by his answer, denied the jurisdiction of the Orphans' Court; or that the plaintiffs could maintain a joint

[Baker's Appeal.]

action; he alleged that the widow had no knowledge of the proceedings, did not sanction them and was satisfied with what she was receiving; that H. W. Baker and Mitchell and wife did not sign the petition, and the last two did not sanction the proceedings; that legal tender notes are the equivalent of gold; the debt incurred by defendant, in accepting the farm, can be discharged in legal tender notes, in which he has always been ready to pay it; that he is not bound to pay any premium that may have been on gold at any time since the testator's death; and if the commercial value of gold is meant, it is void for uncertainty, for since the testator's death gold has had no fixed commercial value.

On the 22d of May 1868, the respondent presented a petition praying for an issue, averring that there were material facts in question, viz.: when the legacies should be paid, whether they were to be paid in gold or its equivalent, and at what time the equivalent should be fixed; what was the commercial value of gold; whether the principal only or the principal and premium added should bear interest, and whether the proceedings had been prosecuted with the consent of some of the legatees. The issue was refused.

The court also decreed that the legacies were charged on the land, and the Orphans' Court had jurisdiction to enforce their payment; that the petition could be sustained whether in the name of one or more of the legatees; that the "reasonable time" in which the devisee is to pay, is one year from the testator's death, and the value of gold is to be estimated at the time the legacies became payable; that "the method of calculation will be to add gold interest to the $3000 for one year; at the expiration of that time, upon the aggregate of gold, principal and interest, allow the premium for gold, payable in lawful currency, and interest on that aggregate to the date of the present decree. It is believed that gold at that time was at 42 per cent. premium; unless a different standard is ascertained or agreed upon, that will be adopted as the basis of calculation. And that the executors be allowed 2 per cent. commission out of the aggregate amount found due."

The court further ordered that the matter be referred to John Armstrong, Esq., as master, to make the calculations on the principles indicated and report a decree.

Previously to the hearing before the auditor Eliza Mitchell and her husband released all their interest to the respondent.

The auditor, August 22d 1868, reported a decree that the respondent be charged:—

[Baker's Appeal.]

"With amount due at death of testator, . . $3000 00

Interest from death of testator till 24th November 1866, . . . . . . . 180 00

                                        3180 00

Premium on gold at 42, . . . . . 1335 00

                                        4515 00

Interest from 24th November 1866, till this date,   471 81

                                       $4986 81"

That he pay $99.73 to the executors; that he pay to each legatee, presently, $610.88, and to the widow the interest annually on $4260, being $3000 with premium on gold at 42 per cent.; to each legatee, at widow's death, $532.50; that the sum to remain during the widow's life be secured by a mortgage to the executors, who shall make a deed to the respondent upon his compliance with the decree. Exceptions were filed to the master's report, which was confirmed and a decree made in accordance with it.

The respondent appealed to the Supreme Court: and assigned for error that the court erred in entertaining the bill, not having jurisdiction; in sustaining a joint bill of some of the legatees; in refusing an issue; in appointing a master; in deciding that the legacies were charged on the land; in their method of calculation; in the amount charged as interest; in decreeing payment to the executors, in the distribution to the legatees; and in ordering the respondent to execute a mortgage for the sum to remain during the widow's life.

*J. A. Hunter* and *H. P. Laird*, for appellant.—The Act of February 24th 1834, § 59, Pamph. L. 84, Purd. 304, pl. 192, gives jurisdiction to the Orphans' Court only where the legacy is charged on the land. Previously the Orphans' Court had no such jurisdiction: McCullough *v.* Montgomery, 7 S. & R. 31; Galloney's Appeal, 6 Barr 40; Swope's Appeal, 3 Casey 61. A direction to a devisee to pay a legacy does not create a charge on the land: Miltenberger *v.* Schlegel, 7 Barr 241; Brandt's Appeal, 8 Watts 199; Montgomery *v.* McElroy, 3 W. & S. 370; De Witt *v.* Eldred, 4 Id. 422; Hackadorn's Appeal, 1 Jones 86.

*H. D. Foster* (with whom was *A. C. Marchand*), for appellees.

The opinion of the court was delivered, November 18th 1868, by AGNEW, J.—We have no doubt that these legacies were charged by the testator upon the farm he devised to his son Joseph. In every case the question of charge is one of intention, to be collected from the whole will. In this case Henry Baker devised his farm to Joseph E. Baker *upon* payment of $6000 in gold.

This expression is not unmeaning, for though not contemplating a postponement of the enjoyment of the farm after Joseph had accepted the devise, it suspended the investiture of a complete title, for the testator then directed that a deed should be made by his executors, and proceeded to add that $3000 should be "secured in said farm, and the interest thereof paid to his wife annually during life," and directed that this $3000, calling it the " balance of purchase-money, remaining in the farm," should be. divided among his children, including Joseph, at her death. Further on he directs that Joseph should be *allowed* a reasonable time for payment of the shares of the heirs, with interest from his death, " should he accept or purchase my farm upon the terms set forth in this my will."

Again, he provides, should he "refuse to purchase or accept my farm," then that it should be sold by his executors. Thus the intention to treat the money to be paid by Joseph as in the nature of purchase-money, and control the title until it be paid in part and the remainder secured, is too apparent to be doubted. The authorities are clear upon this subject, that an intention to charge must be inferred in such a case.

This charge confers jurisdiction upon the Orphans' Court under the 59th section of the Act of 24th of February 1834, to enforce payment of the legacies, after an acceptance of the terms of the will.   We notice that the executors have not been made parties, as required by this section of the Act of 1834.   Especially should this have been done in this case, where the executors are made by the will the conduit of the title and of the security for the unpaid purchase-money.   It is their right to be called in to defend, though they may not petition for the payment of the legacies: Fields' Appeal, 12 Casey 11.   But as no exception was taken or error assigned on this ground, we pass it by.

There was no error in suffering the legatees, or some of them, to join in the petition.   The proceeding is not at common law, but in the nature of a bill of equity, and the joinder inflicts no injury upon the devisee or the executors, but saves litigation and a multiplicity of suits and the increase of costs.   There is nothing in the language of the act or its purpose forbidding it, but the contrary, the court being directed to proceed according to equity and make such decree or order as may be requisite and just.   It was very proper in this case, where the $6000 is viewed by the testator as the entire purchase-money (though to be divided in final distribution), a single sum, therefore, and in the language of the act, "a legacy charged upon real estate."   It is highly proper, therefore, that the Orphans' Court should have all the parties before it in making a decree against the devisee.   One alone might have petitioned, but we perceive no error in others joining with him.

There was no error in refusing the issue.   In the Orphans'

Court the granting of an issue is discretionary under the Act of 29th of March 1832, § 55, Purd. 768, pl. 44. It declares that the Orphans' Court shall have power to direct an issue to the Court of Common Pleas whenever they shall deem it expedient so to do. The supplementary Act of 20th of April 1846, §§ 2, 3, Purd. 768, pl. 45, 46, applies only to the distribution of money arising from sales under execution and Orphans' Court sales.

The legacies drew interest from the death of the testator by the terms of the will, and the period fixed by the court for payment of the first $3000, to wit, one year, was a fair and reasonable time within the meaning of the will. One year is the period fixed by law for the distribution of estates, and the payment of legacies generally, and affords a fair analogy.

When this case was here before, we considered and determined the meaning of the words, "in gold or its equivalent," and held that the equivalent meant the commercial value of the gold in the market. The court was therefore right in determining the premium upon gold when converted into currency, and fixing its amount in legal tender notes. This embraces the interest also. The court was right therefore in allowing the premium on the gold interest.

But there was an error made by the master in calculating the interest from the 24th of November 1866, making the sum of $471.81. This sum includes interest on the interest which had been added to the principal. The interest of the $180 of interest must be deducted.

There is a more serious error in calculating the premium (42 per cent.) on the $3000 payable at the death of the widow. Before this sum falls due, to wit, on the death of the widow, it is impossible to determine the premium or commercial value of the gold. The time of payment is future and uncertain, and gold may then bear no premium, or it may bear one much higher. The decree must be modified to meet this contingency. The other assignments of error are not supported.

And now, November 18th 1868, this cause having come on to be heard, and having been argued by counsel, it is ordered and decreed by this court as follows, to wit: It is considered and decreed that the sum of $6000, payable by Joseph E. Baker, the devisee under the will of Henry Baker, is charged in and by the said will upon the tract of land mentioned and described in the petition, and devised by the said Henry Baker in his will to his son, the said Joseph E. Baker, and that the said Joseph E. Baker shall be charged with, and shall pay in the equivalent commercial value of gold coin, so much thereof as remains unpaid by him, the said residue in the commercial value of gold, being as follows, that is to say:

The sum of $99.35 to the executors of Henry Baker for their commissions, and the sum of $618.24 to John W. Baker; the sum of $618.24 to Martha Jane Ferguson; the sum of $618.24 to Henry W. Baker; the sum of $618.24 to Mary L. Osborn; the sum of $618.24 to Emily G. Singleton, and the sum of $540.88 to the heirs of Wm. A. Baker, and shall retain to himself, the said Joseph E. Baker, one share, to wit, the sum of $618.24, and that the remainder of the said sum of $3000, first due and payable, is satisfied and discharged by the release of David P. Mitchell and Eliza Ann his wife, formerly Eliza Ann Baker.

It is further ordered and decreed that the sum of $3000, directed by the testator to be paid by the said Joseph E. Baker at the decease of his widow, shall be and remain charged in and upon the said premises, in the hands of the said devisee and his heirs and assigns, and that he or they pay to Martha Baker, the said widow, the interest thereof, to wit, $180, annually from the 24th of November 1865 (excepting so much as he may have heretofore paid to her), in gold coin or its equivalent in current money, calculating the same at the commercial value of gold coin at the time each several sum shall fall due and payable; and that at the death of the said widow the said Joseph, his heirs or assigns, shall pay to each of the following named legatees, their executors or administrators, to wit, the said John W. Baker, Martha Jane Ferguson, Henry W. Baker, Mary L. Osborn, Emily G. Singleton, and the heirs of Wm. A. Baker as representing one share, the sum of $375 in gold coin or its equivalent in current money, calculating the said gold coin at its commercial value in currency at the time the said sums shall fall due and payable, at the death of the said widow; and that he, the said Joseph E. Baker, shall retain in his own hands a like sum of $375 for his share. And as to the share of the said Eliza Mitchell, the same is decreed to have been released and discharged by the release of her and David P. Mitchell her husband.

It is further ordered that, upon compliance with the foregoing decree as to the payment of the first sum of $3000, that is to say, on full payment of the said unpaid residue of the said $3000, the executors of said Henry Baker shall execute and deliver to the said Joseph E. Baker, his heirs and assigns, a deed in fee

[Baker's Appeal.]

simple for the land and premises aforesaid, according to the will of the said Henry Baker, deceased, subject to the payment of the unpaid residue of the second sum of $3000 to the legatees thereof at the death of the widow, and the interest thereof annually to the widow, in the mean time, according to the foregoing decree.

It is further ordered that the said Joseph E. Baker pay the costs in the Orphans' Court, and that the costs since the appeal be paid by the appellees. It is also ordered that, on failure of the said Joseph E. Baker to pay any of the sums decreed to be paid by him as aforesaid, the payment thereof may be enforced by process of execution, to be issued by the Orphans' Court in due form of law.