# Knecht's Appeal.

1. A devise unto my son * * * under and subject to the payment of $7000 in ten equal instalments, without interest until due; the first instalment in one year after the decease of my wife," and thereafter yearly. The residue of his estate the testator directed to be divided amongst his other children: the devisee to have no share of the residue, "he is made equal with my other children in the devise—that is to say in the consideration he pays for the same." By a codicil "for more equalizing my children's shares," he directed the devisee to pay $2000 when the first instalment was due, and $500 for every year his widow should survive the testator. *Held*, that the $7000 was a demonstrative legacy payable out of the land, and that it was a charge on the devise.

2. That its division was under the residuary clause, did not alter its specific character.

3. The place where the distribution is made will not fix the intent, if the main intent can be gathered elsewhere in the will.

71  333
169  68
71  333
178  289

71    333
21 SC ⁵208

4. The personal estate being insufficient to pay the debts, the devise had to abate proportionally with the legacies.

5. The devisee was also executor and paid debts beyond the personal estate shortly after testator's death; the widow died eighteen years afterwards: when distribution was to be made, having had the land as devisee he was not entitled to interest on the over-payments.

6. In ascertaining the proportions of abatement, the value of the devise was to be estimated as at the testator's death, not at the time of distribution.

7. There were two executors; the legatees, one of whom was an executor, petitioned, without making such executor defendant, for a decree against devisee for the payment of the legacies; under the 59th sect. of Act of February 24th 1834, both executors being in court as parties, the defect might be amended.

March — 1872. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the Orphans' Court of *Northampton county:* No. 336, to January Term 1872.

In the estate of Christian Knecht, deceased. Christian Knecht died on the 26th day of December 1849, leaving a will dated July 27th 1849, with a codicil dated December 21st in the same year.

After directing the payment of his debts he gave to his wife such household furniture as she might choose and other chattels; one-half of his dwelling, and out of his real estate in Fork township, grain, &c., yearly during her life.

He further provided as follows :—

"Thirdly. I give and devise unto my son, Christian Knecht, Jr., all that certain messuage, &c., in Forks township aforesaid, &c., containing about 122 acres of land, &c., under and subject, nevertheless, to the payment of $7000 in ten equal instalments, without interest until due; the first instalment thereof to be paid one year after the decease of my wife, and the second, two years after her decease, and so on yearly and every year until the full amount of $7000 is paid, and under and subject, nevertheless, to the bequest hereinbefore given to my said wife, out of the said real estate during her natural life.

"Fourthly. I give and devise unto my son, Reuben Knecht, all that certain timber lot, &c., in Bushkill township, &c., containing about six acres of land, &c., this I give to my said son Reuben Knecht, without any other consideration than the parental love for the youngest son, and who is in need for a home.

"Fifthly. And as to all the rest and residue of my estate, I give and bequeath in six shares; that is to say, in five equal shares and one-half share."

He gave one full share each to his children, Abraham, Jacob, Reuben, Polly Adams, Rebecca Whitesell, and the half share to his grandson, Josiah Brown.

"My son Christian Knecht, Jr., is not to have a share out of the residuary part of my estate; he is made equal with my other

[Knecht's Appeal.]

children in the devise of my plantation to him, that is to say, in the consideration he pays for the same."

He appointed his two sons, Christian Knecht, Jr., and Reuben Knecht, executors.

By the codicil he provided:—

"Whereas I have in my said will devised all my real estate in Forks township to my son Christian Knecht, Jr., and the consideration-money for the same is made in yearly instalments of $700 each; and whereas it will be necessary that some of the said consideration-money should be paid down cash at the time when the first instalment becomes due, and for the more equalizing my said children and grandchild's shares. Therefore I order and direct that my said son Christian Knecht, Jr., shall pay at the time when the first instalment is due, in addition of the same, the sum of $2000, and for every year my dear wife Polly may live longer than myself, the further sum of $500, in addition of the said $2000, and the whole sum thereof shall be deducted out of the latter instalments, and the former or first instalments shall be paid as directed in my said last will and testament hereunto annexed,—mentioned."

The will was proved January 14th 1850, and letters testamentary granted to Christian and Reuben, the executors named in it. Christian also accepted the devise of the farm. Reuben took no part in the settlement of the estate.

On the 18th of February 1851, Christian filed an account, charging himself with $851 personal estate; his credits were $2954.13, showing in his favor a balance of $2103.13. This account was confirmed absolutely, August 1851. He filed a final account November 19th 1861; in that his debits were $126.37, and his credits $135.38, showing in his favor a balance of $9.01.

The widow died March 15th 1868.

On the 14th of May 1869 the residuary legatees presented a petition to the Orphans' Court, setting out the devise to Christian, &c., averring that the legacy of $7000 had become due, and praying for a decree against him for its payment.

Christian, by his answer, denied the jurisdiction of the Orphans' Court in this form of proceeding; denied that the petitioners were the proper parties; averred the $7000 constituted part of the residue "which had been bequeathed to the claimants, and had been expended by him as executor, in the payment of the just debts of the decedent, and costs and expenses in settling said estate; and' that for such expenditures in excess of his receipts, derived from sources other than the said consideration-money, together with interest from the time of payment, he further claimed that the several legatees and devisees abate proportionally according to the value of said devises, on the 26th of December, 1849, the day of the death of the testator, or on some other basis of value in

21 P. F. SMITH—22

[Knecht's Appeal.]

conformity with law and equity, or that the said residuary legatees alone should abate for the same."

The matter was referred to W. W. Schuyler, Esq., as auditor, to report the facts and state an account.

He reported the foregoing facts, and also found that at the time of the testator's death this farm was worth about $10,000; at the death of the widow, owing to the general increase in value, it was worth about $20,000.

He further said that the respondent interposed two objections:—

1. That the money claimed was not a " legacy charged upon or payable out of real estate," under the Act of February 24th 1834, sect. 59, Pamph. L. 84, 1 Br. Purd. 450, pl. 222.

2. If it were such a legacy, there can be no recovery in the present proceeding, because of the nonjoinder of the executors as defendants.

" The first of these propositions was that the $7000 is not a legacy at all, no person being designated to whom the money should be paid. * * *

" It cannot be denied that the bequest to the petitioners is in form residuary, and that the terms in which it is expressed are broad enough to include an infinite variety of objects; but in the interpretation of wills the language of the testator is always to be read in the light of extrinsic circumstances.

" One of these circumstances in the present case is the important fact, that after the payment of debts, and after deducting the bequests to the widow, and the devises of his two sons, there was nothing of the estate left but this consideration-money, and only a portion of that. It is to be presumed that the testator knew this fact, and that his personal property, not bequeathed to the widow, would be more than exhausted in the payment of his debts. Knowing this, he knew more, to wit: that whatever the form of the bequest to the petitioners, they could take only the consideration-money, as that was all he had left to give, and knowing this, it is a necessary inference that he so intended it. * * *

" Another reason for holding that the testator, in bequeathing the rest and residue of his estate to the petitioners, had especial reference to the consideration-money, will be found in the fact that in the codicil he refers to this money by name, and directs *it* to be paid in a different manner from that provided in the will '*for the more equalizing his said children and grandchild's shares.*' This purpose could be effectuated only by paying the money to the petitioners, and the inference is a fair and reasonable one, that the testator so intended it.

" The second proposition of the respondent is, that the consideration-money, though it should be held to be a legacy to the petitioners, is not expressly made a charge upon or payable out of the real estate. It is true that the testator does not in so many words

charge this money upon the land, or say that it should be paid out of the land. But this is not necessary. All the authorities agree that it is sufficient, if the intention to charge the land appear under any form of expression; and such being the law, it is difficult to conceive of language more evincive of such an intention, than that used in connection with this devise. The testator devises the farm to Christian, 'under and subject to the payment of $7000.' * * * It follows from the above, in the auditor's opinion, that the testator intended to charge the $7000 on the farm devised to Christian, and that he further intended to give this money to the petitioners as a legacy.

" The second objection of the respondents to the form of the present proceeding, even if well founded, would present a proper case for amendment by the court, and the auditor would be justified in treating the amendment as already made. But is the objection well founded? The act does not direct that the executors should be made *parties* to the proceeding. It only requires that they should have notice given them, which may be done without making them parties; and such seems to be the interpretation of the Supreme Court. * * *

" The requirement respecting notice to the executors has substantially been complied with. One of the executors is a complainant in the bill, and the other is the defendant. It is true they do not appear as parties in their capacity as executors, but this is not at all necessary to affect them with knowledge of the proceeding. All the act requires is that the court should cause due notice to be given to them, without being nice as to the capacity in which it is received, or the manner in which the information is communicated.

" Both parties agree that the whole of the $7000 consideration-money became due and payable after one year from the death of the widow, to wit, March 15th 1869; but the respondent claims to offset against this sum the balance in his favor as executor, as exhibited in the accounts filed by him. He also claims interest on these balances, as follows: on $2103.14, the balance of the first account, from February 18th 1851; and on $9.01, the balance of the second account, from November 19th 1868. The petitioners deny that he is entitled to any offset on account of these balances. After deducting devises and bequests, including the $7000 consideration-money, the petitioners admit there was a deficiency of assets for the payment of debts of $1855.90; add to this a reasonable sum for the expenses of administration, and we have in round numbers $2000 of claims against the estate, for which no provision whatever is made in the will. * * *

" That the testator, having made his will, should subsequently reflect over its provisions is most natural, and it would not be strange, if at such a time, the thought should present itself, or a

passing creditor might suggest it, that the margin he had left for the payment of his debts was entirely too small. As a further warrant for assuming this to be the true state of the present case, we have the fact that this assumption furnishes a key to the interpretation of a portion of the codicil, which cannot be satisfactorily explained upon any other theory. * * *

" Holding, therefore, that the testator in his codicil appropriates $2000 of the consideration-money to the payment of debts, which had been overlooked by him when he made his will, it follows that the respondent should have charged himself with these $2000 in his first account, which would have reduced the balance of that account in his favor to $103.14. It also follows that he has no *legal* right to interest on the $2000, and indeed no legal right to offset the principal sum even. The truth is, that this entire controversy respecting the balances of the two accounts, will have to be determined, not upon legal, but upon equitable principles. It is not a question of set-off, but a question of contribution or abatement.

" Under the will, as between the respondent and each of the petitioners, the respondent takes the lion's share. Had the codicil taken from the petitioners $2000 out of their legacy, with which to pay debts, without more, it would probably have worked a revocation of the legacy *pro tanto* to their increased relative disadvantage. But one of the avowed purposes of the testator in making the codicil is ' the more equalizing of his children and grandchild's shares," and to this end he quickens the times for paying the instalments of the consideration-money. This, however, would be as a feather in the scale, when weighed against the loss of the $2000; so that the reasonable inference is, that the testator did not intend to cast the entire burden of paying the $2000 on the petitioners.

" There is nothing in the codicil to indicate how much the petitioners, or how much the respondent should contribute towards the deficiency of assets, and therefore, recourse must be had to the general rule in equity on the subject of marshalling assets. Armstrong's Appeal, 13 P. F. Smith 312, furnishes the rule, which is, that ' in marshalling assets for the payment of the debts of a testator, specific devises of land abate proportionably with specific and demonstrative legacies." There is no difficulty in the rule itself, but in the application of it there is frequently great difficulty, for in that process the authorities furnish no guide, except that the amount of abatement or contribution is to be determined upon *equitable* principles.

" A proper regard for these principles would dictate one year from the death of the widow, the time when the legacy to the petitioners became due and payable, as a fit *time* for the abatement to take place. At this time the respondent's devise was worth

$20,000. It cost him $7000, leaving as the net worth of the devise to him $13,000. In answer to the respondent's claim of interest on the balances of his accounts, we have the fact that he enjoyed uninterruptedly the possession and yield of this valuable farm, subject only to the rights of the widow, for a period of nearly twenty years, without rent, upon a comparatively trifling investment of a little over $2000, whilst all this time the petitioners derived no benefit whatever from the estate of the testator. Rejecting the claim of interest for this reason, it will leave as the deficiency to be made up, the balances of the executors' two accounts, to wit: the sum of $2112.15. To make up this deficiency, the devise to the respondent and the legacy to the petitioners, under the rule above stated, must abate proportionably. Taking the net value of the farm to be $13,000, and the value of the legacy at its face, the ratio in which they must abate, will be as thirteen to seven. * * *

" The total deficiency, including expenses, is $2335.40.

" The entire fund which must contribute to make up this deficiency, consists of the valuation-money of the devise to the respondent, and the bequest to the petitioners, and amounts to $20,000, as follows: Devise, $13,000; Bequest, $7000. The proportion of the deficiency, therefore, under the rule above stated, to be paid by the petitioners, is seven-twentieths of the whole amount, or $817.39, and their legacy will have to abate by that amount, leaving a balance due them of $6182·61. This balance became due and payable one year from the death of the widow, March 15th 1868; interest is therefore to be from March 15th 1869 to November 24th 1871, the filing of the report."

Christian Knecht filed exceptions to the report of the auditor.

The court allowed the record to be amended by permitting "the executors to become parties."

In deciding on the exceptions, the court (Longaker, P. J.) said, in his opinion :—

" The exceptant contends that the legacies to the petitioners are residuary and general, and that the devise to him is specific; and therefore the residuary fund is liable for the payment of the testator's debts. * * *

" On the one hand, the devisee contends that the debts are to be paid out of the valuation-money, and on the other, the legatees contend that their legacies are at least demonstrative, and perhaps specific, so far as the valuation-fund is concerned, and payable only directly to them; and as the creditors could have enforced the payment of their claims against the real estate, the devisee would be compelled to pay, in order to enjoy and hold the estate devised. The construction contended for by the devisee, therefore, cannot be adopted, because it is so at variance with the expressed intent of the testator (to make an equal distribution of

[Knecht's Appeal.]

his estate amongst his six children, and a half share to his grand-child), that it cannot prevail. * * *

"It is the plain duty of the court so to construe a will that the intent of the testator shall take effect, and where the beneficiaries are his children, in such manner as each shall receive an equal share; and especially is this so when the manifest intent is an equal disposition. * * * To carry out, therefore, the manifest intent of the testator, so as to make an equal distribution amongst his children, the legacies must be construed to be demonstrative, that is, to be paid specifically out of the valuation-money of the $7000, and being demonstrative, the rule of law is, that they and the devisee must abate *pro rata* in accordance with the ascertained valuation of each. It is contended by the legatees, that in the event the fund of $7000 is held to be a specific sum for the pay-ment of the legacies, then the only way in which the creditors could secure payment is by obtaining a lien upon the realty; and that the devisee having paid the debts, can acquire no rights supe-rior to those possessed by the creditors, and as no lien has been secured, the respondent can have no claim for payment in this dis-tribution. This undoubtedly is the rule of law; where the execu-tors are not to collect the proceeds of the real estate, and the right of the respondent to payment, if tenable at all, must stand upon some other ground than that the land devised could have been made chargeable for the testator's debts. * * * The valuation-money being in the hands of the executors for distribution in the Orphans' Court, the Statute of Limitations does not operate to bar the claim. As all the parties are now in the Orphans' Court, I take it that in this proceeding there may be a distribution of the fund, with like force and effect, as if an account had been filed with the register, and certified to the Orphans' Court.

"The respondent's claim for debts paid should not carry interest until interest is chargeable upon the fund, because the devisee has had full enjoyment of the land, subject to the life-estate of the widow. The land, or a sufficient portion thereof, could have been sold for the payment of the debts, and that portion of it which it would have been necessary to sell remaining unsold, and having been actually enjoyed by the respondent, he cannot, by any prin-ciple of law or equity, claim interest.

"The auditor's marshalling of the assets is adopted." * * *

The report of the auditor was confirmed, except so far as to require an abatement on Reuben's devise, which was computed at $280.

The exceptant appealed, and assigned the decree of the Orphans' Court for error.

*B. F. Fackenthall* and *O. H. Meyers*, for appellant.—A resid-uary legacy is a bequest of a testator's estate not otherwise effectu-

[Knecht's Appeal.]

ally disposed of by will: 2 Bouvier's Law Dict. 17; 2 Williams on Executors 1310; Witman *v.* Norton, 6 Binney 396; Hassanclever *v.* Tucker, 2 Id. 531.   The real estate devised to Christian Knecht, Jr., at a fixed price, and the acceptance by him, operated as a conversion of the same, into personalty to the extent of said price: Chew *v.* Nicklin, 9 Wright 84; Patterson *v.* Swallow, 8 Id. 491; Anewalt's Appeal, 6 Id. 416; Boshart *v.* Evans, 5 Wharton 561.

In the present case there was an absolute devise to Christian Knecht, Jr., at a valuation and acceptance, depending on no contingency, and the devisee having actually accepted it, such acceptance, *eo instante*, operated as a conversion.

A residuary legatee can demand contribution for nothing: McGlaughlin *v.* McGlaughlin, 12 Harris 20; McCracken's Est., 5 Casey 426; 2 Williams on Ex'rs 1224.   The executors had the right to demand and receive the consideration-money of real estate devised, which falls in the residuum of the estate: Hart *v.* Homiller, 8 Harris 249.

There are legacies of *quantity* in the nature of *specific legacies*, as of so much money with reference to a particular fund of payment.   These are *demonstrative* legacies: 2 Williams on Ex'rs 1042, 1048, 1051; Armstrong's Appeal, 13 P. F. Smith 316.   The statute does not run in the Orphans' Court for distribution: McCandless's Est., 11 P. F. Smith 9; Micheltree *v.* Veach, 7 Casey 455; Alexander *v.* McMurry, 8 Watts 504.

*E. Allis* and *H. Green*, for appellees.—The will nowhere declares that the $7000, or any of it, shall be applied to the payment of debts.   The first clause of the will directs " that *all* my just debts and funeral expenses be duly paid and satisfied as *soon as conveniently can be after my decease.*"   By this clause the testator establishes an event, to wit: His own death, for the computation of the time within which his debts are to be paid; not after his widow's death, nor their joint deaths, but after his own death alone.   But the $7000 are not to be paid until the death of the widow.   It not only cannot be inferred, therefore, that the testator *intended* the $7000 as assets for the payment of debts, but it must necessarily be inferred that he could not have had such a thought.

The source from which the $7000 are to come is to be held intact so far as the testator's contemplation is concerned during all this time.   It must be inferred that this testator supposed that his personal estate would suffice to pay his debts, and leave a surplus besides, and to have made his testamentary provisions in accordance with that idea: Miller's Appeal, 10 P. F. Smith 404.

It was the testator's intention to make his other children as nearly equal with Christian as possible considering the valuable

devise made to the latter. To make them exactly equal would of course be impossible, for at any rate of valuation, even the lowest, of $10,000, Christian would get $3000 and the other six would get but the $7000 between them, less than $1300 to a share. But to hold that the $7000 must pay the debts exclusively, would of course very greatly increase the inequality in Christian's favor, and against the other legatees. The general idea of *equality among all the children* is the leading sentiment. Christian is declared to be made equal with the rest. But how are they to be equalized? In the testator's contemplation, it is " in the *consideration* he pays for the same," i. e. in the money that Christian was to pay for the land. But if the land was to be the equalizing feature as against the consideration-money, it would of course be necessary that if Christian got the land, his brothers and sisters should have the consideration-money. It is the *payment* of the consideration-money by Christian that the testator considered would equalize him with the others. But that could only be possible by the *payment to them*. The payment by Christian to himself as executor, would not have that effect, and certainly this would be so, if being paid to himself it was to be applied to the payment of debts to which Christian was to make no contribution.

Was the intent of the testator that the legatees other than Christian should take this particular fund? if he did, the legacy is either demonstrative or specific according as we view the character of the fund itself. Whether as being a portion of the whole valuation of the farm and a sum payable therefrom, or as a gross sum of money specifically payable by itself as a condition, or in consideration of the devise. But in neither nor in any event can the codicil be regarded as disposing of the *residue*, distinctively as such : 2 Redfield on Wills 472 ; Hoover *v.* Hoover, 5 Barr 351. The law so interprets wills, in cases of doubt, as that equality of distribution shall take place : Amelia Smith's Appeal, 11 Harris 9 ; Weber's Appeal, 5 Id. 474 ; Weaver's Appeal, 13 P. F. Smith 311 ; Green *v.* Moore, 1 Stewart and Porter 212 ; Horwitz *v.* Norris, 10 P. F. Smith 287 ; Marshall's Appeal, 2 Barr 388 ; Hennershotz's Est., 4 Harris 435 ; Hallowell's Est., Teas's Appeal, 11 Id. 223 ;. Loomis's Appeal, 10 Barr 387.

Christian Knecht's position is that of one of several beneficiaries of a testator's bounty. He is a specific devisee of land. His brothers and sisters are residuary legatees it is true, but they are also by the manifest intent of the testator specific or demonstrative legatees of 'a sum of money to be paid by him. When, after old Christian Knecht's death, claims were presented to an amount greater than the personal estate, he had a right, and it was his duty, to sell under the order of the Orphans' Court so much of the farm as was necessary to pay the claims. Having done this he could assert to us that he had been deprived of a portion of

his devise, and as the devise was by that much diminished in value, he could ask an abatement in the amount of the money charge, which by the will he was required to pay to us.

- General and specific legatees abate between themselves according to the value of their legacies, at the end of the year from the testator's death, this being the time at which legacies are payable, unless any other time of payment be mentioned ; and if a different time be appointed for payment, then the value of their respective legacies must be calculated from such time of payment : Preston on Legacies 360. The farm was not devised to Christian at a fixed value at all, but only subject to a charge. When the testator excluded Christian from the residue he assigned as a reason that Christian was already made equal with the others in the devise of the land, in the consideration-money he was to pay for it.

The opinion of the court was delivered, May 13th 1872, by

AGNEW, J.—We agree with the Orphans' Court in the opinion that the sum of $7000 directed by Christian Knecht, the testator, to be paid by his son Christian Knecht, the appellant, was charged upon the farm devised to the son. He was to take it under and subject to the payment of this sum, and the codicil declares it to be the consideration-money of his land. The intent to charge is plain. The proceeding to recover the legacy was properly under the 59th section of the Act of 24th February 1834. The objection that the executors of the will were not made parties is unfounded in fact. The petition sets forth expressly that letters testamentary were issued to Christian Knecht and Reuben Knecht, one of whom was a plaintiff and the other the defendant. The parties were therefore in court, and the petition was merely informal in its mode of statement, and not substantially defective. The informality was properly permitted to be amended. No objection can be urged against the jurisdiction of the court. And even if the proceedings were not under the 59th section, the Orphans' Court has jurisdiction generally to enforce the payment of legacies under the 47th section of the Act of 1834. The intent of the testator in this will was to make the sum of $7000 payable out of the land devised to Christian, and hence this sum is, in its nature, plainly demonstrative. The fact that the division of it takes place under the residuary clause does not alter its specific character, or the intent of the testator in regard to it. The place alone, where the distribution is made, will not fix the intent, if the purpose of the testator can be gathered elsewhere in the will ; but we must be governed by his main intent. The reasons leading to the conclusion that the sum of $7000 charged on the land, is demonstrative, are so fully given in the opinion of the court, and the argument of the counsel of the appellees, that we need not refer to them. This being the character of the fund and

the source of its payment, the question whether there is other estate to pass under the residuary clause becomes immaterial. It turns out that the personal estate was insufficient to pay the debts, and the real estate was therefore liable for the deficiency. The sum payable out of the farm being demonstrative, it follows that the owners of the realty must suffer a ratable abatement to the extent of the debts, which were liens on the real estate. This deficiency was made up by Christian Knecht, who was both devisee of the farm and executor of the will. It amounted to little over $2000, and was paid by him within a year after the testator's death and settled in his account as executor. The sum charged on his land was not payable, however, until after the death of his mother, which occurred nearly twenty years after the settlement of the account. He therefore claims interest on the balance of his account as executor.

But under the circumstances he is not entitled to interest. When he paid the money he stood in the double capacity of a devisee and executor. As executor it was in his power and it was his duty to have procured an order to sell the land for the payment of the debts. As executor he could not pay the debts out of his own pocket, and wait until after the lien of the debts thus paid had expired. In this respect the executor or administrator is bound to the same diligence as the creditors: Clauser's Estate, 1 W. & S. 208; McCurdy's Appeal, 5 W. & S. 397; Loomis's Appeal, 5 Casey 237. When then as devisee and owner of the land he chose to retain it, and waive the sale he might have made as executor, he elected to take so much of the land as was equivalent to the amount of the debts, and thus assumed the deficiency. The possession and usufruct of the land thus retained were in law the equivalent of the interest on the debts, while the principal only would be a credit in the payment of the $7000, he himself contributing his ratable proportion on account of the devise to him. So far the decree of the court was right, and this leads us to examine the manner of adjusting the abatement between Christian, as devisee of the land, and his brothers and sisters, as the owners of the legacies charged upon it. The Orphans' Court adjusted it by the proportion which the sum of $7000 bore to the value of the real estate. This was correct. Abatement in such case is the act of the law, taking into view the whole scope of the will and the actual intent of the testator, and arriving at what, it is believed, would be the intention of the testator, had he known of the deficiency and undertaken to make the abatement himself. The intention of the testator as gathered from his will is, therefore, still the polar star of the interpretation, and of the adaptation of the abatement to the new situation, which then must be reached on principles of justice and equity. At this point, we think, the Orphans' Court made a slight departure, requiring a modification

of the decree.    The Orphans' Court took the value of the land at the time of adjustment, instead of the time of the testator's death, as the measure of proportional abatement of the devisee of the land.    This was an error.    When the testator made his will, he formed his plan of the distribution of his estate, as the facts then appeared before his mind.    In looking at what it would be just to give Christian in land, and what to the others in money, he had in his view the value of his property as he then knew it, and not a state of things to happen twenty years afterwards, when his land might appreciate or depreciate.    The value of his land then, and the sums to be paid out of it, he fixed in his mind then, as the proportions proper for his children.    He certainly did not look forward to the existence of adventitious, or it may be fortuitous circumstances, as the means of regulating his bounty.    If within a year after Christian took his devise, the house and barn were destroyed by wind or fire, the loss would be his, and not that of those to whom the $7000 were bequeathed.    So an adventitious rise in price in the land would certainly be his and not theirs. Had the testator then known that he was in debt $2000, which must be paid out of his land, debts which must be paid at his death, he certainly would not have adjusted the abatement between Christian's land and their money, on an unknown and prospective value, but he would have done it on the valuation he would then make in his mind.    He knew that his will would take effect at his death, and that the rights of creditors would then attach, and would not wait on distribution under his will.    Had an executor sold the land, or the devisee then paid the debt, it is evident the loss would have been according to the then value of his land.    The postponement of the time of settlement, by the sufferance of a devisee who had paid the debt, clearly would not add to the right of those who were to receive their share in money, at sums then fixed in amount, and in just proportion, as the testator willed it, to the value of his property.    It seems to us, therefore, that the only fair adjustment of the abatement should be upon the basis of the value of the estate as it was at the death of the testator, and when the debts were paid by the devisee.    The decree of the Orphans' Court is therefore affirmed, subject to a modification as to the value of the land devised to the appellant, which is to be ascertained as of the time of the testator's death ; and the record is ordered to be remitted to the Orphans' Court with instructions to carry this modification into effect.    The costs of the appeal to be paid out of the estate.