# Weller's Estate.

*Jurisdiction, O. C.—Act of February 24, 1834, P. L. 73, Sec. 59 —Disputed title—Substantial dispute—Evidence—Act of May 25, 1887, P. L. 158—Party dead—Practice, O. C.—Misjoinder of petitioners.*

1. Where in proceedings under the Act of February 24, 1834, P. L. 73, Section 59, providing a method for compelling the payment of legacies charged upon land, the testator's title to the land at the time of his death is questioned, the Orphans' Court may proceed with the investigation of the title so far as to inform itself whether the denial is made in good faith and whether a substantial dispute exists; and if it appears that the evidence is so insufficient that no issue is raised for submission to a jury, the court may administer the relief prayed for, and it is not necessary that the petitioner's right should first be settled at law.

2. In such proceedings, where the devisee of the land charged with the legacy claimed to be the owner thereof by parol gift from his father, the devisor and record owner, he did not show a substantial dispute sufficient to oust the jurisdiction of the Orphans' Court, where, while he proved that he had been in possession of the land in question for more than twenty-one years, it appeared by his own testimony that he entered by permission of his father, without any agreement or understanding that he was to become the owner; that subsequently a part of the land had been similarly occupied by his brother; that several years before his father's death he had offered to purchase the property in question, thereby

acknowledging his father's ownership, and where it appeared that such improvements as he had erected were offset by the price which he had received from the sale of timber, brick and tile from the land, and especially where it appeared that the testimony of these facts was incompetent because of the death of one party to the controversy.

3. In such case the improper joinder of the executor as petitioner will not invalidate the proceedings, where the proper legatees are also parties petitioners.

Argued Oct. 7, 1914. Appeal, No. 209, Oct. T., 1914, by Charles C. Weller, from decree of O. C. Lawrence Co., March T., 1913, No. 30, ordering payment of a legacy charged upon land in Estate of Augustus Weller, deceased. Before BROWN, MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Petition to compel the payment of a legacy by the devisee of land, charged with the payment thereof. Before PORTER, P. J.

The opinion of the Supreme Court states the facts.

The court awarded the relief prayed for. Charles C. Weller appealed.

*Error assigned* was the decree of the court.

*J. N. Martin,* of *Martin & Martin,* for appellant.—The executor of the estate of Augustus Weller was improperly joined as a party petitioner: Logan v. Richardson, 1 Pa. 372; Field's App., 36 Pa. 11; Conrad's App., 33 Pa. 47; Olwine's App., 4 W. & S. 492; Luckenbach's App., 170 Pa. 586; Hartzell's Est., 178 Pa. 286; Baker's App., 59 Pa. 313.

The court had no jurisdiction to determine the title to the real estate claimed by appellant: Gross v. Weiand, 151 Pa. 639; North Shore Rd. Co. v. Pennsylvania Co., 193 Pa. 641; Stout v. Williams, 203 Pa. 161; Messimer's App., 92 Pa. 168; Long's App., 92 Pa. 171; Delaware, L. & W. R. R. Co. v. Newton Coal Min. Co., 137

Pa. 314; Washburn's App., 105 Pa. 480; Booher v. Browning, 169 Pa. 18.

*Wylie McCaslin,* for appellee.—The proper parties are in court: Hartzell's Est., 178 Pa. 286; DeHaven's Petition, 7 Dauphin Co. 219.

The alleged misjoinder of the executor was not raised in the court below, and should not be considered in the Supreme Court: Kelley v. Kelley, 182 Pa. 131; Henry v. Zurflieh, 203 Pa. 440; Shannon v. Castner, 21 Pa. Superior Ct. 294.

The evidence falls short of the requirements as to the character of evidence which shall be necessary to take the matter out of the statute of frauds: Poorman v. Kilgore, 26 Pa. 365; Dill v. Westbrook, 226 Pa. 217.

OPINION BY MR. JUSTICE MOSCHZISKER, January 2, 1915:

This was a proceeding under the 59th Section of the Act of February 24, 1834, P. L. 73, by certain legatees named in the will of Augustus Weller, deceased, to force the payment of a charge upon land devised by the testator to his son, Charles C. Weller. The Orphans' Court granted the relief prayed for, and the devisee of the land has appealed.

Augustus Weller died August 6, 1908, leaving a will dated in January, 1907, by which he devised to his son, Charles, a farm of about fifty-two acres, on condition that he pay to the testator's executor the sum of two thousand dollars "within one year from my decease if I should survive my wife or within one year of the decease of my wife if she should survive me"; and the testator expressly stated, "which amount I charge upon the land so devised." After giving another farm to his son, William, and a piece of land to his son, Frank, each subject to a charge, and making a bequest to his daughter, Jane, the testator gave $800 to his daughter, Catherine Frew, $800 to his daughter, Eleanor Stun-

kard, $1,500 to his daughter, Flora Thompson, and $700 to his granddaughter, Effie Weller; and he provided that at the time appointed "the said several sums charged against the parcels of land shall be paid to my executor, and the same, with other moneys in his hands, shall be used to pay the legacies hereby given to my several daughters," adding, "if there be a residue or remainder of money in my estate it is my will and I hereby bequeath the same in equal shares to my daughters, Catharine Frew, Eleanor Stunkard, Jane Weller and Flora Thompson."

The petition was presented by Edith Brothers, executrix of the estate of Catherine Frew (who had predeceased her father), and Eleanor Stunkard, two of the legatees; and it was joined in by the executor of the estate of Augustus Weller, deceased. The record shows that Flora Thompson was subsequently granted leave "to become a joint petitioner." The complainants averred, inter alia, that more than one year had elapsed since the death of the testator and his widow; that but a comparatively small sum had been paid on the legacies; and that demand had been made upon the executor for the payment of the balance, but he had replied that he had not assets sufficient for the purpose, because Charles C. Weller had failed and refused to pay the $2,000 charged upon the land devised to him. Charles C. Weller, the respondent and appellant, filed an answer wherein he admitted most of the material averments relied upon by the petitioners, but insisted that he was the owner in fee simple of the land which Augustus Weller had undertaken to devise to him; and for that reason he contended his father had not died seized or possessed thereof. It is difficult to understand from this answer whether Mr. Weller claimed the farm by purchase, as a gift from his father, upon the theory of continued adverse possession, or through a combination of the last two; but one thing is plain,—he declined to pay the $2,000 upon the ground that he owned the property be-

fore the date of his father's will. On this question of title, the petitioners averred that Augustus Weller acquired the property in dispute "about forty years prior to his death, that the title thereto continued in him from that time until his death, and at no time did he either give or convey, or by any other means transfer to Charles C. Weller the title to said land except by his last will and testament......nor did he at any time make or enter into any parol contract with Charles C. Weller whereby the latter should acquire the title to the said land, or any right whatever thereto except the 'right to reside thereon as he has done." On the other hand, the respondent averred that he had moved upon a farm containing 105 acres (including the 52 acres in controversy) in 1871, and had held continuous possession of a portion of it to the present time; that Augustus Weller (who had "purchased" the property some years before that date) then owed him several hundred dollars, and it was agreed that this money should be "appropriated in part payment of said land"; that the father agreed to "give said land to his two sons, Charles and William"; that subsequently it had been divided into two farms, one being taken by William and the other by Charles; that the respondent had paid taxes and otherwise acted as the owner of the property with the knowledge of his father; further, that he had expended considerable sums of money in erecting buildings and improving the farm held by him.

The case came on for hearing, and Charles C. Weller testified, under objection and exception, that he moved on the farm April 5, 1871; that he had lived there continuously ever since, and had never paid any rent or other consideration for the occupancy of the land; that at the time he took possession there was no understanding about the ownership, but he had told his father that he wanted the property and the latter had replied "all right"; that after he had moved on the land he had no particular talk with his father about the ownership,

"only once in a while he would tell me that the farm belonged to Bill and me." Subsequently the witness testified that when the farm was acquired his father said, "he bought it for me......but did not bring Bill into it at that time, he did not bring Bill into it for a good while after that"; he said that the land was purchased by his father at least four years before he, the appellant, moved upon it; and in answer to the question, "When you first went into possession you had no agreement or understanding with your father about this land?" he replied, "No," and to the next question, "When did you first have any agreement, if you had any with him?" he said, "Never had any with him"; again, in reply to the question, "When you first moved on that farm you did not claim to own it, did you?" he said, "Well, no, not exactly, I did not claim to own it right then, my father told me I had an interest in it—cash interest"; but throughout his testimony he constantly refers to the money which gave rise to this alleged "cash interest" as funds "loaned" by him to his father. At another place in his examination, the appellant stated that it was "about 1880" when Augustus Weller first said he intended the farm for him, Charles; then he testified that, "some time later on," his father said William was to have part of the property. The testimony shows that William Weller moved upon the farm several years after Charles, and at that time there was no division of the land made between them; that when the appellant went into possession there was no agreement stating how much of the land should belong to him, and that the boundaries were not fixed until 1892 or 1893, when a survey was made and a fence erected between the part claimed by Charles and that occupied by his brother. Although the appellant testified that he had paid the taxes on his part of the farm since 1874 or 1875, yet, he admitted that in the beginning he paid taxes on the whole 100 acres, including the part subsequently occupied by William, and, in addition, upon 35 acres which

beyond any question belonged to his father and was never claimed by the witness; and while the appellant asserted the expenditure of about $800 in the erection of a house, $150 for a wagon shed, and $100 for other improvements, yet, he admitted that he had taken, used and sold timber from the property to a considerable amount, and that for several years he had manufactured brick and tile out of the land without any objection from his father; moreover, he did not tell when the alleged valuable improvements were made, and for all that appears the money he spent may have been fully offset in value by the timber, brick and tile which he took from the land. Finally, Mr. Weller admitted that in 1892 he had offered to purchase the 52 acres now claimed by him for the sum of $1,300, and that he had then tendered to his father certain written "articles of agreement" produced at the trial; this document was signed by the appellant and expressly recognized his father as the owner of the property, for it names Augustus Weller as the party of the first part and Charles C. Weller as the party of the second part and recites that "said first party agrees to sell to the said second party one-half of the farm now belonging to the said first party" (describing the 52 acres in controversy). The witness said that he was willing to give the $1,300 to get a paper title, but that his father had refused to sign the agreement, without stating any reasons for his declination. Two neighbors appeared, but neither gave testimony sufficient to sustain the claim of the appellant.

Charles C. Weller was disqualified as a witness under Paragraph E, Sec. 5, of the Evidence Act of May 23, 1887, P. L. 158, for the "thing in action" was an alleged part of his father's estate, which had passed by "act of law" to the petitioning legatees, who represented the interest of the decedent in "the subject in controversy," and the witness was a "surviving party" whose interest was "adverse to the right of the deceased party"; but, for present purposes, waiving that point and assuming

the competency of the witness and the truth of his testimony, it is clear that the evidence produced by him failed to measure up to the standard required to sustain his claim of title, either on the theory of a parol gift, a parol purchase or adverse possession. In fact, the inadequacy of the testimony is so apparent that discussion upon the subject would serve no useful purpose; we need but refer to Poorman v. Kilgore, 26 Pa. 365; Dill v. Westbrook, 226 Pa. 217; Wright v. Milton, 219 Pa. 253; Greenwich Coal & Coke Co. v. Learn, 234 Pa. 180, and Johns v. Johns, 244 Pa. 48, for the standard of proof required in cases of this character. The appellant contends, however, that, since he claimed title to the land, the Orphans' Court had no right to adjudge the question of his ownership,—that a jury had to pass upon the issue thus raised.

Under the authorities, had the investigation in the court below been a common law trial, on the evidence here presented, the judge would have been obliged to give binding instructions against the appellant; this being so, the question arises,—what jurisdiction had the Orphans' Court in the premises? The Act of February 24, 1834, P. L. 73, Sec. 59, provides, "When a legacy is or shall be hereafter charged upon, or payable out of real estate, it shall be lawful for a legatee to apply, by bill or petition, to the Orphans' Court......whereupon, such court, having caused due notice to be given to ...... (the) executor, and to the devisee......of the real estate charged with such legacy......may proceed according to equity, to make such decree or order touching the payment of the legacy, out of such real estate, as may be requisite and just." A line of cases beginning with Craven v. Bleakney, 9 Watts 19, including Strickler v. Sheaffer, 5 Pa. 240, and Hartzell's Est., 178 Pa. 286, all hold that the remedy provided by the Act of 1834 is an exclusive one. In Pierce v. Livingstone, 80 Pa. 99, 102, speaking by Mr. Justice SHARSWOOD, we state that the design of this act is "to vest in the Orphans' Court the

large powers of a Court of Equity" in all cases falling
under the statute, and in the early case of Dower v. Don-
ner, 9 Watts 60, 63, we said, by Mr. Justice ROGERS, that
under the act in question the Orphans' Court had "power
in the premises to do all a Court of Chancery could do."
The point is, looking upon the court below as a Court of
Chancery, when the question of the ownership of the
property arose,—what were its powers and duty?  In
Cutler's Est., 225 Pa. 167, 171, speaking of the general
jurisdiction of the Orphans' Court to deal with ques-
tions of title, we said, "if, at the testator's death, the
property in controversy was presumably his (as it was
here, because he purchased it and the title stood in his
name), a mere denial of his ownership unsupported will
not oust the court of its jurisdiction, but the court may
proceed with the investigation so far as to inform itself
whether the denial is made in good faith and a substan-
tial dispute exists"; also see Williams' Est., 236 Pa.
259.   Thus we see that, both by virtue of its general
powers to deal with property presumably within its jur-
isdiction, and under the special equity powers given by
the Act of 1834, supra, the court below had ample juris-
diction preliminarily to investigate the question of the
appellant's alleged title; when, however, this investi-
gation developed the fact that the testimony depended
upon by him was not only inadequate to support his
claim of ownership, but was so insufficient that it showed
no substantial dispute to be submitted to a jury, then,
what were the powers and duty of the court below?   The
answer to this last question is squarely given by the
decision in Wilson v. Cather, 214 Pa. 3, which rests upon
the principle that, when in any case the right to the re-
lief sought depends upon a question of title to real estate,
and the plaintiff has the paper title, a Court of Equity
may enter upon a preliminary investigation of the evi-
dence relied upon by a defendant who disputes this
prima facie title and asserts ownership in himself; and
if "his proofs show that the denial of the plaintiff's right

is not based upon facts which in law show a substantial dispute," so that if the case were before a jury binding instructions against the defendant would be justified, then the court may administer the relief asked, and it is not necessary that the right of the plaintiff should be first settled at law, or that an issue should be granted to determine the question of the title set up by the defendant. We feel that the principle of Wilson v. Cather applies here and fully sustains the decree entered by the court below, which was to the effect that Charles C. Weller should pay the $2,000 charged upon the farm devised to him within two months, or, upon failure so to do, payment should be enforced by a proper writ for the sale of the land.

While it is true that the executor of the estate of Augustus Weller joined in the petition to the court below, and that in several cases we have decided that such a petition must be by the legatees and not by the executor of the testator (see Field's App., 36 Pa. 11; Conrad's App., 33 Pa. 47; Luckenbach's App., 170 Pa. 586; Hartzell's Est., 178 Pa. 286; Baker's App., 59 Pa. 313), yet, we have at no time determined or intimated that, where proper parties petition, the mere joinder of an improper party would annul the proceeding; on the contrary, in Hartzell's Est., supra (p. 290), where the Orphans' Court refused to entertain the petition because it was by the executor alone, we affirmed the decree with permission to the court below to "reinstate the petition and permit the legatees to come in upon it as parties plaintiff"; also see Baker's App., 59 Pa. 313, 317, where we state that one legatee alone may petition or others join with him, and that the executors should be called in to defend, and Knecht's App., 71 Pa. 333, 343, where we ruled that, though the petition may be informal as to the position in which such executors are placed, whether plaintiff or defendant, yet, the informality may be amended. Here, all necessary parties were in court; although the executor was joined as a

plaintiff, instead of being named as a defendant, yet, since no material harm was done thereby, the petition may be considered as properly amended in that particular. In Kelley v. Kelley, 182 Pa. 131, 139, we said that "after a hearing and judgment on the merits" in the court below, the misjoinder of a plaintiff "will not be held fatal here"; there are many other cases to the same effect. Finally, it may be well to state that, so far as this record shows, no question concerning the informality of the petition or other pleadings, or as to the form of the adjudication, was raised in the court below, by exception or otherwise; there, the present appellant stood upon the one point,—that, since he had raised a question concerning title to real estate, the Orphans' Court had no jurisdiction in the case; and, under the facts at bar, that point must be decided against him.

The assignment of error is overruled, and the decree is affirmed; the appellant to pay the costs.