## Balok Estate.

Argued October 27, 1942. 

 Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ. 

*Cyrus A. Davis,* for appellant.

*Robbin B. Wolf,* with him *W. I. King,* for appellee.

OPINION BY KENWORTHEY, J., February 26, 1943:

Appellant is the executor and residuary legatee under the will of his mother, Elizabeth P. Balok. The lower court (1) surcharged him $1,225.56,[1] the balance in the Chartiers Trust Company, McKees Rocks, which he claimed for himself under a joint-and-survivorship ac-

---

[1] The lower court, in its first opinion, refers to the amount of the surcharge as $1,229.58; in its second opinion as $1,229.50. In the first exceptions to the adjudication and decree of distribution appellant refers to it as $1,225.56, and in later exceptions as $1,225.46. The cashier of the trust company testified that the amount was $1,225.56, but it is not entirely clear whether this was the exact balance at the time of decedent's death. Our adoption of this figure—$1,225.56—for the purpose of this opinion is not to be considered binding; it will be the lower court's responsibility to determine the correct amount.

count, (2) ruled that under the third clause of the will decedent's son Andrew is entitled to three of a total of seven row-houses, and (3) directed the payment of the debts out of the residue. Appellant challenges these rulings.

*First.* Elizabeth P. Balok died testate on July 9, 1940. Appellant and his wife lived with decedent who was a widow. In March or April, 1940, she became ill and was taken to St. John's Hospital in Pittsburgh. In order to meet her expenses she directed appellant to arrange for the transfer of the savings account balance in the Mellon Bank of Pittsburgh to the Chartiers Trust Company and to then set up the account in the latter so that appellant could withdraw funds, without decedent's signature, for the payment of bills and expenses. On June 3, 1940, decedent, by her mark, executed an instrument on the trust company's form providing that the funds in the account "shall be our joint property and owned by us as joint tenants with right of survivorship and not as tenants in common; and upon the death of either of us any balance in said account shall become the absolute property of the survivor." The instrument then provided for the withdrawal of funds upon the order of "either of us or the survivor."

Appellant claims the balance in the account as a gift causa mortis and his principal objection to that part of the decree holding there was no such gift and directing him to account for the balance is that the orphans' court had no jurisdiction to determine the question of ownership.

" 'If the proofs show that the denial of the plaintiff's right is not based upon facts which in law show a substantial dispute, so that if the case were before a jury binding instructions against the defendant would be justified, then the court may administer the relief asked, and it is not necessary that the right of the plaintiff

should be first settled at law, or that an issue should be granted to determine the question of the title set up by the defendant': *Weller's Estate,* 247 Pa. 196, 204, 93 A. 331." In re *Est. of Eliza Gallagher,* 109 Pa. Super. Ct. 304, 308, 167 A. 476.

That there was no dispute about the purpose for which the account was set up, appears from appellant's own testimony. On cross-examination, he was asked: "Q. You made no denial at the will contest that the purpose of the withdrawal of the funds from the Mellon National Bank and the transfer of the funds at the Chartiers Bank were as you stated to Mr. Davis for the purpose of enabling you to pay bills that accumulated while your mother was in the hospital? A. No, I didn't deny it. Q. And you don't deny it now? A. No."

We think this case is ruled against appellant by the Gallagher case, supra.

It is suggested that recent pronouncements of the Supreme Court in *Keyser's Estate,* 329 Pa. 514, 198 A. 125 and *Moyer's Estate,* 341 Pa. 402, 19 A. (2d) 467, compel a different conclusion; that the orphans' court's jurisdiction depends entirely on the possession, or at least the presumptive possession of the property in dispute which in this case was never in appellant in his fiduciary capacity (*Smith's Estate,* 141 Pa. Super. Ct. 571, 15 A. (2d) 523; *Foulke's Estate,* 334 Pa. 186 5 A. (2d) 179) and that the question of jurisdiction must be examined into in vacuo—before any consideration is given to whether the evidence presents a substantial dispute. There is a ready answer. *Cutler's Estate,* 225 Pa. 167, 73 A. 1111, makes it plain that the primary question is ownership, not possession, and that if there is no dispute, as distinguished from a mere claim, about it there is nothing to oust the jurisdiction of the orphans' court nor anything to submit to a jury. No case has been called to our attention in which it

was held both that evidence of a substantial dispute of ownership was lacking and that the orphans' court was without jurisdiction. It would be absurd to say that that court must refer to the common pleas or to a jury *no* dispute.

*Second.* By the third clause of her will, decedent devised to her son, Andrew, "the two (2) houses located at and known as Nos. 1140 and 1142 Dohrman Street, Stowe Township, Pennsylvania ......" These houses were part of a block of seven identical rowhouses. The end or corner house was No. 1142. The remaining six houses were numbered 1140-A, 1140-B, 1138-A, 1138-B, 1136-A, 1136-B. The lower court held that it was the intention of decedent to give to Andrew three houses—1142 and the two houses numbered 1140 viz. 1140-A and 1140-B. Appellant contends that the expression "two (2) houses" is controlling and represents the total number intended.

When we assume, as we must, that decedent was familiar with the peculiar numbering of the houses and that there were two houses numbered 1140, we think the court's conclusion was clearly correct. We think testatrix intended to give Andrew the two houses numbered 1140 and the house numbered 1142.

*Third.* Taking the position that the only personalty available for the payment of debts consisted of the furniture shown in the inventory and appraised at a value of $105.10, appellant applied for and the court granted him leave to operate the real estate and apply the rentals for that purpose, and to account therefor. This procedure was pursuant to section 14 of the Act of June 7, 1917, P. L. 447, 20 PS 503.

The effect of the court's decree of distribution was to charge all of the debts against the rentals received from the real estate which passed to appellant under the residuary clause. As to the general debts of decedent, apart from the expenses incurred in operating

the real estate after her death, this was clearly correct: there is nothing in section 14 which purports to affect the rule that, in the absence of a manifest contrary intention, debts are to be paid out of the residuary estate. See *McGlaughlin v. McGlaughlin*, 24 Pa. 20; *Hoover v. Hoover*, 5 Pa. **351.**

But in rendering his account appellant apparently intermingled the expenses of maintaining the real estate incurred after decedent's death with the other debts of decedent, and in charging all the debts against the residue the effect may have been to give to Andrew three-sevenths of the gross receipts from the real estate (the seven row-houses) without imposing on him, or his estate, any of the burden of the operating expenses. We are not entirely clear about this because the restated account was omitted from the printed record. We shall not attempt to state the account. But we declare it a general proposition, subject perhaps to exceptions unnecessary to consider now, that when a court authorizes an executor to collect and apply rents for the payment of decedent's debts the proceeds from the real estate should be accounted for separately and the net only distributed to creditors and legatees. And if, in the present case, this is done and the costs of operating the real estate are separated from the general debts, the personalty, in view of the inclusion of the bank balance, will be almost sufficient to pay the latter and the net proceeds from the real estate will simply be divided between Andrew's estate and appellant on the basis of three-sevenths to Andrew and four-sevenths to appellant.

The appeal is dismissed and the record remitted for further proceedings in accordance with this opinion.