Edwin Gaw Flanagan, Administrator of Bridget Gallagher, deceased, *v.* James Nash, Appellant.

185   41
199  613

*Evidence—Witness—Party dead—Act of May 23, 1887, section 5, clause e, P. L.* 158.

Where a deceased person, in her lifetime, deposited money in a savings fund in the joint name of herself and another person, such other person, in an action against him by the administrator of the deceased to recover the deposit, is not a competent witness as to what took place between him and the deceased in regard to the fund in controversy.

*Gift—Gift inter vivos—Donatio mortis causa—Bank deposit—Delivery.*

Where a person deposits his own money in a savings fund in the joint name of himself and another, under a stipulation in the deposit book that either may draw the fund, or the survivor may draw it, the other person after the death of the owner of the fund cannot, in the absence of any other evidence, establish title to the fund, either as a gift inter vivos, or as a donatio mortis causa.


Argued Jan. 5, 1898. Appeal, No. 98, Jan. T., 1897, by defendant, from judgment of C. P. No. 4, Phila. Co., September Term, 1895, No. 504, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit to recover the amount of a bank deposit. Before WILLSON, J.

The testimony at the trial showed that the money in question belonged to the decedent, Bridget Gallagher, and all that she had ever done toward parting with possession of it was to deposit it in the Beneficial Saving Fund to the joint account of herself and the defendant; that during the lifetime of Bridget Gallagher she alone exercised control over the fund; that the account was opened on April 14, 1892; that on April 12, 1893, she withdrew $58.80, by individual draft, she then having possession of the deposit book, and presenting it at the bank; that she died on November 11, 1893, and the defendant drew out the balance of the account on November 16, 1893. Upon demand made by the administrator, the defendant claimed that this money had been given him by the decedent.

Other facts appear by the opinion of the Supreme Court.

At the trial, the court refused, under objection and exception, to permit James Nash, the defendant "to testify to anything that took place between him and the decedent in regard to the subject-matter in controversy." [1]

The court gave binding instructions for plaintiff. [5]

Verdict and judgment for plaintiff for $2,935.53. Defendant appealed.

*Errors assigned* were (1) rulings on evidence, but not quoting the bill of exceptions; (5) above instructions.

*Joseph P. McCullen*, for appellant.—The defendant, James Nash, being the donee under a gift causa mortis, was a competent witness to testify in his own behalf: Bowen v. Goranflo, 73 Pa. 357; Frew v. Clark, 80 Pa. 170; McCabe's Est., 6 Pa. C. C. R. 42; Wells v. Tucker, 3 Binney, 366; Venus's Est., 2 York Leg. Rec. 193; Miller on "Competency of Witnesses in Civil Causes in Penna.," p. 137; Greenawalt v. McEnelley, 85 Pa. 355; Karns v. Tanner, 66 Pa. 302.

In this case the property, the subject of the gift, was already in the name of the donee, James Nash, and nothing was required to complete the gift beyond the delivery to him of the bankbook, and this only as an evidence of title. The defendant, however, was excluded as an incompetent witness. From the testimony, however, it was shown that he had the bank book in his possession at the time of Mrs. Gallagher's death; that he produced it, and that he drew money upon it. The gift was complete: Mack v. Mechanics & Farmers' Savings Bank, 50 Hun (57 Sup. Ct. Rep. N. Y.), 477; Hannon v. Sheehan, 19 N. Y. Supp. 698.

*James S. Williams*, with him *Henry C. Loughlin*, for appellee.—The defendant, James Nash, was not a competent witness in his own behalf: 2 Kent's Com. *438; Nicholas v. Adams, 2 Whart. 17; Michener v. Dale, 23 Pa. 59; Walsh's App., 121 Pa. 237; Emery v. Clough, 63 N. H. 552; Marshall v. Berry, 13 Allen, 46; Yeakel v. McAtee, 156 Pa. 600; Smith's Est., 18 Pitts. Leg. Jour. (N. S.) 276; Karns v. Tanner, 66 Pa. 302; Duffield v. Hue, 129 Pa. 94.

The evidence for the plaintiff showed that the money was

Bridget Gallagher's : Irish v. Nutting, 47 Barb. 370 ; McDowell v. Murdock, 1 Nott. & McC. 237 ; Dickeschied v. Exchange Bank, 28 W. Va. 340 ; Trough's Est., 75 Pa. 115 ; Zimmerman v. Streeper, 75 Pa. 150 ; Walsh's App., 122 Pa. 177 ; In re Ward, 51 How. Prac. Rep. 316 ; Schick v. Grote, 5 Cent. Rep. 826 ; Drew v. Hagerty, 81 Me. 231 ; Murray v. Cannon, 41 Md. 466 ; Taylor v. Henry, 48 Md. 550 ; Mack v. Bank, 50 Hun, 477 ; Young v. Young, 80 N. Y. 422 ; Mechling's App., 2 Grant, 157 ; Smith's Est., 144 Pa. 428 ; Smith v. Speer, 34 N. J. Eq. 336.

OPINION BY MR. JUSTICE GREEN, March 21, 1898 :

The money in dispute was the property of Bridget Gallagher exclusively. The defendant had no ownership or interest of any kind in it. She kept the money on deposit in the Philadelphia Savings Fund in her own name and as her own property. Subsequently, on April 14, 1892, she drew the money out of the Savings Fund and deposited it in the Beneficial Savings Fund Society of Philadelphia. When she made that deposit the defendant was with her, and the money was deposited in the joint names of herself and the defendant. On the margin opposite the signatures the words "Either to draw" were entered by the treasurer of the association. A book was also handed her which had these words stamped upon it, "Either party to draw, and in case of death of either of them, the survivor shall have full power to withdraw the deposit as if the same had been duly transferred to such survivor." There was no evidence to show that the entry appearing on the book was made in pursuance of any directions given by Bridget Gallagher. On April 12, 1893, she drew out $52.80, and she died on November 11, 1893.

On the trial the defendant was offered as a witness to show anything that took place between him and the deceased in regard to the subject-matter in controversy, but upon objection made to his competency he was rejected.

It is only necessary to determine the precise relation of the parties to the action in order to decide this question. The plaintiff is the administrator of Bridget Gallagher, and the defendant is the claimant to the fund in question. The title of the decedent to the money has passed to her administrator by an act of the law, and he represents her interests in the subject in

controversy. He, as her representative, claims the money in controversy as belonging to her estate, and the defendant claims the same money as his own property. As a matter of course, these claims are antagonistic and adverse. The contest is in no sense a controversy between parties "respectively claiming such property by devolution on the death of such owner." It is not a contest between two adversary claimants to the property of the former owner, but a contest between the legal representative of that owner, and one claiming adversely to the title of the owner. Of course, such a claimant is not competent to testify in his own behalf in such a case. The express words of the act of May 23, 1887, P. L. 158, sec. 5, clause *e*, exclude him. The words of the act are, "Nor, where any party to a thing or contract in action is dead . . . . and his right thereto or therein has passed, either by his own act or the act of the law, to a party on the record, who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract, . . . . be a competent witness to any matter occurring before the death of said party, . . . . unless the issue or inquiry be devisavit vel non, or be any other issue or inquiry respecting the property of a deceased owner, and the controversy be between parties respectively claiming such property by devolution on the death of such owner, in which case all parties shall be fully competent witnesses." It is only necessary to say that this proceeding is neither an issue of devisavit vel non nor an issue or inquiry respecting the property of a deceased owner, between parties claiming an interest in such property by devolution on the death of the owner. It is, on the contrary, a claim to the property of the owner by a title adverse to the owner, in an action brought by the legal representative of the owner, the defendant being the surviving party to a contract in action between himself and the other deceased party to such contract. The case is an exact instance in which the excluding words of the act of 1887 are distinctly applicable, and the question needs no further argument.

The only remaining question is whether the defendant has any title to the money by way of gift. The difficulty in the way of the defendant's contention in this regard is, that the decedent never parted with her title in her lifetime, and hence there was no delivery of the subject of the alleged gift. She had the right to draw out the whole of the money up to the

moment of her death, and for that reason she still held her title to the money. It never passed away from her while she lived, and therefore, there was no delivery. There is no difference in this respect between gifts inter vivos and gifts causa mortis. Actual delivery of the subject of the gift is just as necessary in the one case as in the other. The only material difference between the two is that there is a right of reclamation in the latter which does not exist in the former. This whole subject has been so fully illustrated by our Brother WILLIAMS, in the case of Walsh's Appeal, 122 Pa. 177, that any further reference to authorities is unnecessary. He there said, " A gift is more than a purpose to give, however clear and well settled the purpose may be. It is a purpose executed. It may be defined as the voluntary transfer of a chattel, completed by the delivery of possession. It is the fact of delivery that converts the unexecuted and irrevocable purpose into an executed and irrevocable contract. All gifts are necessarily inter vivos, for a living donor and donee are indispensable to a valid donation; but when the gift is prompted by the belief of the donor that his death is impending, and is made as a provision for the donee, if death ensues, it is distinguished from the ordinary gift inter vivos, and called donatio mortis causa. But by whatever names called the elements necessary to a complete gift are not changed. There must be a purpose to give; this purpose must be expressed in words or signs; and it must be executed by the actual delivery of the thing given to the donee or some one for his use. In every valid gift a present title must vest in the donee, irrevocable in the ordinary case of a gift inter vivos, revocable only upon the recovery of the donor in gifts mortis causa."

These words and many more to a similar effect contained in the opinion, are absolutely destructive of any claim of title by way of gift, on the part of the defendant. Moreover, the statement in the bank books that either might draw, or the survivor might draw, does not at all establish a title as owner in the defendant. It is a mere right to draw the money that is conferred. There is nothing to show that if the defendant drew the money he could keep it as his own, and without such words no title by way of gift could pass. We are very clearly of opinion that the case was correctly decided by the learned court below. The assignments of error are all dismissed.

Judgment affirmed.