## Disbro's Estate.

*Van Scoten & Little*, for exceptant; P. T. Lonergan, contra.

SMITH, P. J., November 20, 1930.—Nellie Birchard, administratrix of this estate, having filed her account as such on August 22, 1929, Effie Ingraham, a party in interest, filed her petition for review of the same, alleging for the

purposes thereof that the administratrix had personally converted assets of the estate to her own use and failed to account for the same. Upon answer being filed, we appointed an auditor to take evidence and report concerning the same; and on March 3, 1930, referred the same to Gerritt E. Gardner as such auditor, previously appointed on exceptions to the account, that he might make a report. Said auditor filed his report and the same was confirmed *nisi* on September 2, 1930, to which exceptions were filed on October 27, 1930, two in number, but in substance both relating to the finding of the auditor that the accountant had omitted from her administration account the sum of $431, represented by a savings account, No. 5039, in the First National Bank of Montrose, Pennsylvania.

The evidence relied upon by the learned auditor for the surcharge was, *inter alia,* the endorsement in the savings account book No. 5039, as follows:

"The sums deposited in this book belong to E. J. Disbro and Mrs. Nellie Birchard (September 3, 1927) jointly. It being understood each may withdraw on his or her individual order during their joint lives, and that any balance upon the death of either shall belong to the survivor."

Concerning this deposit, some oral testimony was taken by the auditor. First we note that of Mrs. Nellie Birchard, the adverse claimant thereto by right of survivorship, contending that the same in the lifetime of Mr. Disbro was held by both as an "estate by entirety." She, although otherwise incompetent to testify to matters or conversations in the lifetime of the decedent, was made competent by being called for cross-examination by the other party to the controversy.

Her testimony is that all of such deposit was made by Mr. Disbro, the decedent; none by her.

It also appears from the evidence that the funds represented by the J. J. Murray note of $400 and one against the Township of Franklin for a like amount were of the same deposit drawn out by the decedent personally in his lifetime and loaned by him to the debtors named. While the auditor's findings, not excepted to, were that these securities were the property of Mrs. Birchard by gift from the decedent, this evidence as to the source of the funds constituting the loans has some bearing upon the character of the savings account from which they were drawn, as affecting the balance of $431 remaining on deposit at the death of Mr. Disbro, the decedent.

There is no direct evidence to show in whose handwriting the endorsement upon the bank book was made, or whether by the authority or direction of the decedent, or whether he was present when it was made. This is important to consider, as indicated by the language of Mr. Justice Frazer in Mardis, Admin'x, *v.* Steen, 293 Pa. 13, 17, in which case a very similar endorsement was made as in the case at bar, but by "an officer of the bank without evidence that the notations were made pursuant to directions given by the defendant" depositor, whose sole funds constituted the deposit there in question.

To effect a gift *inter vivos* of such an account, there must either be (a) an actual delivery of the subject matter of the gift, or (b) where manual delivery is not practicable, a transfer may be made by assignment or other writing or token which will evidence a present intention to pass right of possession to the donee: Mardis, Admin'x, *v.* Steen, 293 Pa. 13.

And where one deposits his own money in a savings fund in the joint names of himself and another, under a stipulation that either may withdraw the funds or the survivor may draw it, and the owner dies, the survivor of the two cannot, in the absence of any other evidence, establish title to the funds as a gift *inter vivos:* Flanagan *v.* Nash, 185 Pa. 41; Grady *v.* Sheehan, 256

Pa. 377; or, somewhat differently expressed, to establish such a gift "two essential elements must combine: An intention to make a gift then and there, and such actual or constructive delivery at the same time to the donee as divests the donor of all dominion over the subject and invests the donee therewith:" Tearpoak v. Tearpoak, 85 Pa. Superior Ct. 470.

And we may add that, while actual delivery is not always necessary, "the property may be given to one in trust for the donee, or the donor may make himself a trustee in the donee's behalf," nevertheless, what is absolutely essential is that "in each case the title must pass from the donor:" Henderson, J., in Waltman v. The Germantown Trust Co., 92 Pa. Superior Ct. 480, 484. In that case the owner of a savings account endorsed that in the event of his death he authorized the trust company to pay over to his wife the balance of money standing in his account. It was held testamentary in its character and not a gift, and revoked as such by a subsequent will of the husband, and his estate was held entitled to recover the same from the depository.

The language of Mr. Justice Green in Flanagan v. Nash, 185 Pa. 41, 45, that "the statement in the bank books that either might draw, or the survivor might draw, does not at all establish a title as owner in the defendant. It is a mere right to draw the money that is conferred, there is nothing to show that if the defendant drew the money he could keep it as his own, and without such words no title by way of a gift could pass;" applies with equal force against the alleged donee at bar, so far as the present endorsement quoted is considered.

The testamentary character of a similar endorsement or direction as to the disposition of the balance of a savings account was given effect in Grady v. Sheehan, 256 Pa. 377, 381, and in analogous cases followed in the lower courts, such as Housekeeper's Estate, 10 D. & C. 494, and Geisinger's Will, 5 D. & C. 493. What could be more testamentary in language than the concluding words of the present endorsement: "and that any balance upon the death of either shall belong to the survivor."

In phraseology, the language of the endorsement at bar is substantially the same as in Mardis, Admin'x, v. Steen, 293 Pa. 13, and Reap v. Wyoming Valley Trust Co., 300 Pa. 156, in both of which the funds were decreed to the survivor claimant; but the former was in the opinion distinguished from Flanagan v. Nash, 185 Pa. 41, already cited in this opinion, by drawing attention to the fact that in the latter case the "memoranda were made by an officer of the bank without evidence that the notations were made pursuant to direction given by the decedent" (the italics are ours), and such absence of direction was considered as the missing "other evidence" required to give it effect as a gift inter vivos, and for that reason the court denied the survivor's title to the money remaining on deposit. The same principle applies at bar against Mrs. Birchard's claim to hold the $431 in controversy here.

The distinguishing features here from those in Bailey's Estate, 86 Pa. Superior Ct. 322, and Reap v. Wyoming Valley Trust Co., 300 Pa. 156, because of entirely sufficient "other evidence" there presented, are too obvious to require extended discussion here.

Also, the ruling that "the fact that the funds were at all times subject to the check of either party did not make the transaction subject to the objection that the gift was not complete:" Mardis, Admin'x, v. Steen, 293 Pa. 13, does not apply in the present case to favor the survivor claimant.

If it be contended the intention to give and presumed acceptance by the donee survivor, noted in Reap v. Wyoming Valley Trust Co., 300 Pa. 156, supports the alleged donee's claim here, we note that the endorsement there was

"money [meaning all the money on deposit] payable to the two women named, either or survivor, that is *at present* payable" and not as at bar, "each may *withdraw* on his individual order;" and, further, while no mention of the fact is made, it is significant that in the case last cited the two to whom the amount was payable were close kin (sisters), which may have had some bearing on the decision rendered, although not expressly stated, as in Bailey's Estate, 86 Pa. Superior Ct. 322, the same relationship of parties existed, as well as the fact that the deposit was of funds from the sale of their joint property.

We, therefore, agree with the learned auditor that, from the interpretation of the bank book and language of the endorsement, the title to and ownership of the $431 balance on deposit did not pass as a gift *inter vivos* to Mrs. Birchard, the claimant; and we may accentuate this conclusion by the fact that the securities of J. J. Murray and Franklin Township, although bought from funds of the same deposit, but drawn out by the decedent, were properly found by the auditor to have been themselves given to Mrs. Birchard after the investments were made by him.

We proceed to consider the "other evidence" besides the mere endorsement on the bank book required by the authorities we have cited above, which, it is contended, supports the gift to Mrs. Birchard. First, as to the possession of the book, there is a direct contradiction by witnesses. Mrs. Birchard testifies that the book was turned over to her at the same time as the notes, some time in December, 1927; that she kept the book in her safety box, which is corroborated by William Birchard, her husband; that the book, with the other papers, were kept in her box, to which she had the key up to Mr. Disbro's death; this Mrs. Birchard says she had in her possession for six months before such decease, and kept it in her bureau drawer at Sayre, Pennsylvania. These two witnesses are classed as directly interested in sustaining the gift. On the contrary, Mrs. Emma Stanford, a disinterested witness, having her attention directed to the same box, which was produced before the auditor by Mrs. Birchard, in answer to the question, "Did you ever see Edwin J. Disbro have that box?" said "Yes;" and to the question, "Did he have that box in the house at the time of his death?" answered, "I think it was, sir. He had it out the night before." To the question, "You say you think it was, do you know?" she answered, "Yes, that is the box; he kept it in the bureau drawer;" and that the night the witness saw it was "Friday night, and he [Disbro] died Saturday morning." Witness "never saw any other box" and "he [Disbro] had it out a number of times." This witness was housekeeper for the decedent at his home near Franklin Forks, Pennsylvania; which, we have judicial knowledge, is located about sixty miles distant from Sayre, Pennsylvania.

As to the declarations of the decedent, Arthur Coy testifies: "He said he had given his account to her and gave her these notes . . . was going to make a will, but he did not." Philip Wheaton testifies: "He [Disbro] said he had fixed up his bank book so that it was held jointly by himself and Nellie Birchard, and that he had turned over two notes, one of John Murray and one of Franklin Township." To the question: "Did he tell you in this conversation who he turned the bank book and this note and certificate of indebtedness over to?" he answered: "Yes. He said: 'Nellie [Mrs. Birchard] has been awful good to me,' and he said 'I want her to have all of it *when I get through.*' He said: 'I have done that much already.' "

We therefore have (a) the closing words of the endorsement on the bank book: "The balance *after the death* of either shall belong to the survivor;"

(b) Arthur Coy's evidence that, although he had "given his account to her and gave her these notes;" still he "was going to make a will," and (c) Philip Wheaton's evidence that he "had turned over the bank book," etc.; he expressed himself further to the intent, we may conclude, that it should not vest in Mrs. Birchard until after his death, by saying: "I want her to have all of it *when I get through.*"

Influenced by the further principles that to sustain a gift *inter vivos*, the burden is upon the one claiming such to establish all the facts essential to the validity of such gift, and "The mere possession of the property is not sufficient evidence of a gift. . . . The evidence must show that the donor intended to divest himself of the property, and should be inconsistent with any other purpose:" Reading Trust Co. *v.* Thompson, 254 Pa. 333, 336, 337; that the evidence on the part of claimant must be clear and convincing *(i. e.,* clear and satisfactory), and that where the question arises after the death of the alleged donor (as at bar) a mere preponderance of evidence will not suffice: Smith's Estate, 237 Pa. 115, 118, 119; Sullivan *v.* Hess, 241 Pa. 407; we are forced to the conclusion that the evidence at bar does not fulfill the legal requirements of a gift *inter vivos*, and concur with the auditor's findings to that effect.

And now, to wit, November 20, 1930, the exceptions filed by Mrs. Nellie Birchard to the auditor's report are dismissed and the report confirmed finally. Exception noted and bill sealed for Mrs. Nellie Birchard, exceptant.

From Gerritt E. Gardner, Montrose, Pa.