## Harbaugh's Estate.

*N. F. Keller*, for exceptants; *John R. Jackson*, contra.

DAVISON, P. J., January 10, 1931.—John H. Harbaugh, on August 4, 1927, had two deposits in the First National Bank and Trust Company, Waynesboro, Pennsylvania: one a savings account and one a checking account. On that date he came to the place of business of that bank and informed the teller, Mr. Royer, that he wanted to make these accounts so that in case something happened to him they would go to his daughter Nettie, and, in pursuance of that request, the accounts were changed by adding the name Nettie Balsley to that of John H. Harbaugh, the accounts and books were stamped "either or survivor of above named persons may issue checks against this account," and the books were returned to John H. Harbaugh and taken away by him. The decedent was told at that time that in case of his death the money in these accounts would belong to his daughter without anything more, and after the change was so made at his request, he told the cashier of the bank, Mr. Brown: "I wanted to change my accounts so that when I am gone Nettie will get this money. Mr. Royer has fixed me up." Said John H. Harbaugh died October 7, 1927, and at the time of his death there was in these two accounts the sum of $737.01, which was paid to said Nettie Balsley (Henrietta M. Balsley) by said bank on her check on June 30, 1928.

In and by his last will and testament said John H. Harbaugh gave his estate to the First National Bank and Trust Company in Waynesboro, Penn-. sylvania, in trust to pay the income therefrom to his said daughter Henrietta M. Balsley for her lifetime, and at her death, after several bequests, gave the balance to the Methodist Episcopal Church of Waynesboro, Pennsylvania, and he appointed said First National Bank and Trust Company in Waynesboro, Pennsylvania, as executor of said will and letters testamentary were duly issued to said company.

Said executor filed its first and final account in said estate, but did not include in it said bank deposits, and exceptions were filed to said account by the said Methodist Episcopal Church of Waynesboro, Pennsylvania, and the learned auditor surcharged the executor with the amount of said deposits, to wit, $737.01.

To the report of the auditor, exceptions were filed by said Henrietta M. Balsley and by said First National Bank and Trust Company, executor. These exceptions all go to and raise the question of the right of said Henrietta M.

Balsley to draw said deposits from said bank after the death of her father and the right of said bank to pay them to her as owner thereof, and, therefore, not to account for said funds as such executor.

The auditor found that the actions and directions of John H. Harbaugh to the officials of the First National Bank and Trust Company on August 4, 1927, did not constitute either a gift *inter vivos* or a gift *causa mortis* to Henrietta M. Balsley, and with this conclusion we agree. In Flanagan, Admin'r, *v.* Nash, 185 Pa. 41, 44, the Supreme Court discusses very fully and lays down clearly what is necessary in order to constitute such gifts, and there it is said: "The difficulty in the way of the defendant's contention in this regard is, that the decedent never parted with her title in her lifetime, and hence there was no delivery of the subject of the alleged gift. She had the right to draw out the whole of the money up to the moment of her death, and for that reason she still held her title to the money. It never passed away from her while she lived, and, therefore, there was no delivery. There is no difference in this respect between gifts inter vivos and gifts causa mortis. Actual delivery of the subject of the gift is just as necessary in the one case as in the other." We must, therefore, hold that there was no gift of either kind of these deposits by John H. Harbaugh to Henrietta M. Balsley.

It is urged on us, however, by the counsel for the exceptants that there was the creation there that day by said John H. Harbaugh of a joint tenancy in said deposits, with a right of survivorship. The learned auditor held that no such joint estate was created, and even if it had been, that survivorship had not been established as required since the passage of the Act of March 31, 1812, P. L. 259, 5 Sm. Laws, 395. When the matter was argued before the court we were disposed to agree with that conclusion of the auditor, but since that time, after a careful study of the authorities, we cannot agree with him and must hold that such an estate, with right of survivorship, was created and that the exceptions filed to the report of said auditor must be sustained and the report referred back to said auditor for correction.

In Flanagan *v.* Nash, *supra*, relied on by counsel for the Methodist Episcopal Church, and cited by the auditor in support of his report, the notation stamped on the bank books was almost identical with the stamp used in the case now before us, but that which distinguished it from the case at bar is that which is noted in the decision of the Supreme Court, where it is said: "There was no evidence to show that the entry appearing on the book was made in pursuance of any directions given by Bridget Gallegher." In the instant case, we have the evidence of Mr. Royer that John H. Harbaugh said he wanted to make the account so that in case something happened to him it would go to his daughter Nettie; that the changes on the books were made at that time while he was there and according to his wishes; that he was told then that in case of his death the money represented by these two accounts would belong to his daughter without anything more, and that the books, with the notations above set out stamped in them, were then delivered to him. And we have the testimony of Mr. Brown that Harbaugh said to him after this change was made, but before he left the bank, "I wanted to change my accounts so that when I am gone Nettie will get this money. Mr. Royer has fixed me up." Mr. Brown also testified that he said that he wanted the books to show that when he was gone his daughter would get the money. This evidence shows clearly that the entries in the instant case were made at the direction of and with the knowledge and consent of said John H. Harbaugh. Was this sufficient in law to create a joint tenancy in the funds with right of survivorship? If so, the bank was right in paying the money to Mrs.

Balsley; if not, the same bank as executor should have accounted for the same as part of the estate of John H. Harbaugh. That a joint tenancy may be established in personal property has been recognized law in Pennsylvania for many years, and is again approved in Reap *v.* Wyoming Valley Trust Co., 300 Pa. 156, which involved a bank account as here, and is a direct recognition of the right to create such an estate and to have it carry with it a right of survivorship if properly so created. The estate of joint tenancy may be created orally, for the rule as laid down in Leach's Estate, 282 Pa. 545 (quoting Redemptorist Fathers *v.* Lawler, 205 Pa. 24), is: "Survivorship as an incident of an estate granted being still lawful, its creation becomes a question of intent. No particular form of words is required further than that they shall be sufficient to clearly express an intent in order to overcome the presumption arising from the statute." In that case a library was involved and the original agreement was not in writing.

In Mardis *v.* Steen, 293 Pa. 13, the Supreme Court, in referring to Flanagan *v.* Nash, *supra*, again calls attention to the fact that in that case the memoranda were made by an officer of the bank without evidence that the notations were made pursuant to direction given by decedent. In that case, too, the court says: "The fact that the funds were at all times subject to the check of either party did not make the transaction subject to the objection that the gift was not complete." The court further says (quoting the court below): "It may be conceded that the full control which one has over his personal property includes the right to create such a joint ownership and survivorship either for a consideration or by gift," citing Grady *v.* Sheehan, 256 Pa. 377, 379. In Mardis *v.* Steen, *supra*, the court concludes, page 18: "In the present case we have, in addition to the fact of a joint account being opened, an express agreement creating a joint tenancy, and authorizing and directing the bank to deal with the survivor 'as sole and absolute owner thereof.' The agreement is under seal, which imports a consideration: Grady *v.* Sheehan, 256 Pa. 377, 380. Whether we view the transaction as a gift or as the creation of a joint ownership based on a valid consideration, it is an agreement which, under the decisions above mentioned, the parties had a right to make, and the language used in the memorandum accompanying the deposit expresses with sufficient clarity the intention to create a joint tenancy with a right of survivorship."

The question was also raised that said Henrietta M. Balsley had no knowledge of this transfer to her until after the death of her father, and, therefore, could not have accepted the same. In Reap *v.* Wyoming Valley Trust Co., *supra*, the Supreme Court said at page 158: "While the record does not expressly show acceptance of the arrangement by Catherine Reap, yet, under the circumstances, acceptance may be presumed: Sparks *v.* Hurley, 208 Pa. 166, 172." When we turn to that case we find it based on a number of earlier decisions, all of which hold that such gift is good without any information being given to the grantee, or any acceptance by her: Smith *v.* Bank of Washington, 5 S. & R. 318; Allen *v.* McMasters, 3 Watts 181; Hostetter *v.* Hollinger, 117 Pa. 606.

We are, therefore, of the opinion that in the instant case, while no gift *inter vivos* or *causa mortis* is established, the transaction on the part of said John H. Harbaugh was the creation of a joint tenancy in these bank accounts in him and said Henrietta M. Balsley, and that as so created it carried with it a right of survivorship, and that the exceptions to the auditor's report must be sustained and the report referred back to him so that distribution may be made in accordance with this opinion.

In this connection, we desire to say that if all banks were more careful in the making of accounts in two or more names so as to have the parties say in writing what estate they were creating, whether a mere power to draw on said funds without ownership, or a joint tenancy without survivorship, or a joint tenancy with right of survivorship, or whatever they may desire, it would be safer for the banks, make sure that the desire of their depositors was carried out and save dissatisfaction and litigation.

Now, therefore, January 10, 1931, the exceptions filed to the auditor's report in said estate of John H. Harbaugh, deceased, are sustained and the surcharge of $737.01 is directed to be canceled and said report is referred back to said auditor to be modified and corrected in accordance with this decree.

From Albert Strite, Chambersburg, Pa.