In Re: Estate of Eliza Gallagher, Deceased.

Argued April 10, 1933.

Before
TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER and JAMES, JJ.

*Carlton M. Randall,* for appellant.

No paper book or appearance for appellee.

OPINION BY PARKER, J., July 14, 1933:

Elizabeth Gallagher, also known as Eliza Gallagher, died intestate on August 15, 1931, and Daniel J. Gallagher, her son, was appointed administrator of her estate. On August 21, 1931, Daniel J. Gallagher presented a petition to the orphans' court of Erie County setting forth the facts ·that he had qualified as administrator of the estate of Elizabeth Gallagher; that there was a savings account in the Bank of Erie Trust Company in the name of Eliza Gallagher and Martha Weiss; that the account was the property and money of the decedent; and that Martha Weiss had no interest therein, and praying that an order be made upon the bank to turn over the bank account to the petitioner. A rule to show cause was granted on said petition, but there is nothing on the record to show that any citation or rule was served upon either Martha Weiss or the Bank of Erie Trust Company. The court proceeded to hear evidence after the return day of the rule. While no answer was filed by Mrs. Weiss or formal appearance entered, we conclude from the record that she appeared, was represented by counsel, and contested the petition. As we have indicated, there was not any proof of service of a citation or rule upon the bank. It did not file an answer nor is there anything disclosed by the record showing that it submitted itself to the jurisdiction of the court. The court, after hearing, discharged the rule, holding in effect that under the evidence produced, the account in the bank was a valid gift inter vivos to and the property of Mrs. Martha Weiss.

From this order an appeal was taken by Daniel J. Gallagher, an heir of decedent, interested in the estate.

The orphans' court had jurisdiction of the subject matter, at least to the extent necessary to determine in limine whether a substantial dispute existed as to the ownership of the bank account, and if there was not such substantial dispute, had power to direct the bank to turn over such account to the administrator. "We need not stop to inquire into the distinction [here] made between property in possession of an executor and property for which the executor is accountable. The latter is the more general term and together they embrace all that was owned by the testator at the time of his death. In either case ownership by the testator at the time of his death is antecedently implied, and where such ownership can be affirmed with respect to any property, the executor is charged with accountability therefor, whether in or out of his possession, and the jurisdiction of the proper orphans' court over both is complete...... If at testator's death the property is shown to have been in his possession, or if for any other reason it was presumptively his, a mere denial of his ownership unsupported will not oust the court of its jurisdiction, but the court may proceed with the investigation so far as to inform itself whether the denial is made in good faith and a substantial dispute exists": Cutler's Estate, 225 Pa. 167, 170, 73 A. 1111. Also, see Messmore's Estate, 290 Pa. 107, 116, 138 A. 81, and Williams' Estate, 236 Pa. 259, 84 A. 848.

If the proofs "show that the denial of the plaintiff's right is not based upon facts which in law show a substantial dispute, so that if the case were before a jury binding instructions against the defendant would be justified, then the court may administer the relief asked, and it is not necessary that the right of the plaintiff should be first settled at law, or that an

issue should be granted to determine the question of the title set up by the defendant:" Weller's Estate, 247 Pa. 196, 204, 93 A. 331. "It has long been held that an issue will not be awarded unless evidence is produced raising a controlling disputable question of fact:" Walkinshaw's Estate, 275 Pa. 121, 125, 118 A. 766.

The lower court, apparently assuming that the bank was a mere stakeholder, disposed of the rule on the theory that the contest was between the estate and Mrs. Weiss, and held that the proofs showed a valid gift inter vivos to her, relying on the case of Reap v. Wyoming V. T. Co., 300 Pa. 156, 150 A. 465. We are all of the opinion that this was error.

There was not any substantial dispute disclosed. We will disregard the testimony of Mrs. Weiss as to the transfer of the account to her in the lifetime of her mother as she was incompetent to testify: Estate of Blaszcak, 90 Pa. Superior Ct. 589, 593. This, however, is not important as the same facts were proven by a competent witness. On December 30, 1929, Eliza Gallagher opened an account in her own name in the Bank of Erie Trust Company by depositing $500 of her own funds received from her son, the appellant. The only other credit in the account was $50 of her own funds received from the same source and deposited on October 23, 1930. About March, 1930, Mrs. Gallagher called at the bank and requested that Martha Weiss' name be added to the bank book. The teller explained to Mrs. Gallagher that if the account was carried in the names of "Mrs. Eliza Gallagher and Mrs. Martha Weiss," both signatures would be required to withdraw any sums; but that if "or" was used in place of "and," either could draw. Mrs. Gallagher then "consented" to the use of "or." Four withdrawals, aggregating $275, were made prior to the date of Mrs. Gallagher's death, so that with ac-

cumulated interest there was a balance at that time of $242.66. One of the withdrawals was made by Mrs. Gallagher to pay taxes on her home, but it does not appear who made the other three withdrawals. The bank book was in decedent's room in her own house at the time of her death. When the account was opened, Mrs. Gallagher signed a signature card and later, at a date not fixed, Mrs. Weiss signed the same card. This signature card was offered in evidence, but consisted of nothing more than an agreement to be bound by the regulations of the bank and could not in any way be construed to be an assignment of the account; in fact, there was not any written assignment or writing in the nature thereof transferring to Mrs. Weiss any interest in the account. M. J. Gallagher, another son of decedent, testified that his mother had said to him that in the event "of anything happening to her, that Martha was to get that money [the bank account]."

Did these facts show a valid gift inter vivos to Mrs. Weiss? In the case of Flanagan v. Nash, 185 Pa. 41, 39 A. 818, the decedent had deposited a sum of money in a bank. Subsequently she drew out that money and deposited it in another bank in the joint names of herself and James Nash. A book was given to her upon which these words were stamped: "Either party to draw, and in case of death of either of them, the survivor shall have full power to withdraw the deposit as if the same had been duly transferred to such survivor." The administrator of decedent having brought action against Nash, who had withdrawn the balance from the account after her death, it was held that there was not a valid gift to Nash. Mr. Justice GREEN there said (pp. 44 and 45): "The difficulty in the way of the defendant's contention in this regard is, that the decedent never parted with her title in her lifetime, and hence there was no delivery

of the subject of the alleged gift. She had the right to draw out the whole of the money up to the moment of her death, and for that reason she still held her title to the money. It never passed away from her while she lived, and therefore, there was no delivery. There is no difference in this respect between gifts inter vivos and gifts causa mortis. Actual delivery of the subject of the gift is just as necessary in the one case as in the other. The only material difference between the two is that there is a right of reclamation in the latter which does not exist in the former........ All gifts are necessarily inter vivos, for a living donor and donee are indispensable to a valid donation; but when the gift is prompted by the belief of the donor that his death is impending, and is made as a provision for the donee, if death ensues, it is distinguished from the ordinary gift inter vivos, and called donatio mortis causa. But by whatever names called the elements necessary to a complete gift are not changed. There must be a purpose to give; this purpose must be expressed in words or signs; and it must be executed by the actual delivery of the thing given to the donee or some one for his use. In every valid gift a present title must vest in the donee, irrevocable in the ordinary case of a gift inter vivos, revocable only upon the recovery of the donor in gifts mortis causa ...... Moreover, the statement in the bank books that either might draw, or the survivor might draw, does not at all establish a title as owner in the defendant. It is a mere right to draw the money that is conferred. There is nothing to show that if the defendant drew the money he could keep it as his own, and without such words no title by way of gift could pass.'' Also, see Grady v. Sheehan, 256 Pa. 377, 100 A. 950, and Tearpoak v. Tearpoak, 85 Pa. Superior Ct. 470.

These cases were followed by Mardis v. Steen, 293

Pa. 13, 141 A. 629, and Reap v. Wyoming V. T. Co., supra. In the Mardis case, B. F. Morgan (assumed name for Mardis) opened a joint account in the names of B. F. Morgan or Florence M. Steen and deposited with the bank in the form of a signature card a written statement, signed by both parties and witnessed, to the effect that all sums of money should be taken to belong to them as joint tenants and not as tenants in common, and in the case of the death of either, the bank was authorized and directed to deal with the survivor as sole and absolute owner thereof. In the Reap case, Mary Gilligan had opened an account in the bank in her own name. Subsequently she lodged with the bank a writing which directed that the name of Catherine Reap be added, using the following language: "Please add Miss Catherine Reap name on my deposit book No. 12,782 and make the account to read: Money payable to either or the survivor of them." This paper was signed by Mary Gilligan and duly witnessed. The latter died, and the court awarded the fund to the survivor. The distinguishing point between the two lines of cases to which we have referred is that in the latter there was written evidence of a transfer of the deposit. In the Mardis case, the court said (p. 15): "Where manual delivery is not practicable, a transfer may be made by assignment or by other writing or token which will indicate a present intention to pass right of possession to the donee. Whether there was sufficient proof of a transfer of possession in this case so as to vest title in defendant as survivor, must depend upon the construction of the writing on the signature card accompanying the bank deposit." In Crist's Estate, 106 Pa. Superior Ct. 571, 162 A. 478, we endeavored to point out this distinction. The opinions in both the Mardis and Reap cases indicate no intention of overruling the law as laid down in Flanagan v. Nash, supra, and there was no occasion

so to do for they are in entire harmony. One of the essential elements of a valid gift inter vivos is that there shall be an actual or symbolic delivery of the thing given to the donee vesting in the recipient a present and irrevocable title. In the instant case, as in that of Flanagan v. Nash, supra, "there was no evidence of an agreement either oral or in writing, other than the mere fact of a joint deposit." There was no writing or token which indicated a present intention to pass right of possession to the donee. Under the evidence as here presented, there was no substantial dispute to submit to a jury, and the court might have finally disposed of the petition as a matter of law if the bank had been made a party to the proceedings.

While there is no doubt about the right of the orphans' court to require the delivery to its representatives, to wit, an administrator or executor, of property of a decedent where there is no substantial dispute as to the title, such third party is entitled to a day in court. No process of any kind was issued requiring the bank to make answer; neither has it voluntarily appeared in the proceeding. A citation should have issued when the petition was presented, requiring the bank either to deliver the money on deposit to the administrator or show cause why this should not be done. It is the bank, and not Mrs. Weiss, that has control of the fund. After the death of Mrs. Gallagher, $100 was withdrawn from the account by some one. We have no right to assume, in the absence of an opportunity to the bank to answer, that such withdrawal was not lawfully made under some existing right. It is, therefore, necessary to send the record back to the court below in order that it may issue a citation to the Bank of Erie Trust Company, requiring it to pay over the fund to the administrator or show cause why it should not do so. If the bank

replies that it is a mere stakeholder, the court will then be in a position to enforce an appropriate decree. If the bank questions the right of the administrator to receive the fund by reason of some matters not yet appearing, that court has full power to take evidence and determine whether a substantial dispute exists.

The order of the lower court is reversed, and the record is remitted to the court below to the end that further proceedings may be had not inconsistent with this opinion.