## Zellner's Estate.

Argued April 30, 1934. Before SIMPSON, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Frank L. Pinola,* with him *Nathan Hyman,* for appellant.

*James M. Stack,* for appellee.

OPINION BY MR. JUSTICE DREW, May 21, 1934:

For many years Louis Zellner had a savings account in the White Haven Savings Bank. On December 6, 1929, at his direction, the bank placed the account in the name of "Louis Zellner or Teresa Piro," his daughter. Zellner died intestate on September 9, 1931, and two days later Mrs. Piro withdrew the entire amount then standing on deposit in the account, $18,434.81. Subsequently letters of administration upon her father's estate were granted to her. When she filed her account as administratrix, her brother, Francis Zellner, the decedent's only other heir, filed exceptions to the account and petitioned the court for a citation upon the administratrix to show cause why she should not file a supplemental inventory including the sum withdrawn from the savings account of the decedent after his death. The administratrix answered "that the said money......is my sole and separate property and does not belong to the estate of my father, Louis Zellner." After a hearing, the court below sustained the exceptions and surcharged the administratrix with the full amount, from which decree she appealed.

The principal witness at the hearing was the cashier of the bank. He testified that the decedent, after his wife's death, and a couple of months before Mrs. Piro's name was added to the account, met him on the street and asked him if there were not some way in which it could be arranged that it would not be necessary for him to come to the bank to withdraw money. (Previously the account had stood in the name of decedent and his wife.) To this query, the witness said, he replied: "We could add another name to the book and the second party could be given authority to withdraw money and it would not be necessary for you to come to the bank your-

self." He also testified that, subsequently, "Mr. Zellner and Mrs. Piro came to the bank and directed me to put her name on the book and said he was giving her authority to withdraw moneys at any time and also after his death she could draw out the money, just for convenience's sake." The reason which the decedent assigned for his action, the cashier said, was that "he wanted Mrs. Piro's name put on so it would not be necessary for him to lose time to come and get money at the bank." This was all the testimony given at the hearing as to the transaction. However, appellant's attorney offered to prove by her "that she was present at the time her name was added to the bank book and that it was at the direction of her father and at his request that the name be added so she could withdraw money at any time so it could be hers and after his death she could withdraw it all." Upon objection, the court refused to receive the offer, on the ground that the witness was an adverse claimant to the estate of the deceased. In his opinion, however, the learned judge of the court below declared that he had erred in excluding this testimony, and would consider the case, as counsel have done and as we shall do, as if the witness had testified in every respect to the contents of the offer.

The testimony produced, even when considered with the testimony offered but not permitted to be given, was clearly insufficient, we think, to base a finding that the decedent, in having his daughter's name put upon the bank book, created a joint tenancy in the account, with the incident of survivorship. The proof falls far short of that in Mardis v. Steen, 293 Pa. 13; Reap v. Wyoming Val. Trust Co., 300 Pa. 156, and Bailey's Est., 86 Pa. Superior Ct. 322, where such a joint tenancy was held to have been created. The instant case is analogous, rather, to Flanagan v. Nash, 185 Pa. 41; Grady v. Sheehan, 256 Pa. 377; Crist's Est., 106 Pa. Superior Ct. 571, and Gallagher's Est., 109 Pa. Superior Ct. 304, where it was held that the evidence was insufficient to indicate an in-

tention on the part of the donor to vest a present interest in the fund in the party whose name was added to the account. The distinction between the two lines of decisions is that in the cases where a joint tenancy with the incident of survivorship was held to have been created, there was affirmative evidence that it was the intention of the parties that the account should be so held; in the Mardis and Reap cases there were express written, signed and witnessed declarations to that effect, while in the Bailey case the accounts concerned were composed of moneys derived from the sale of property owned jointly. On the other hand, in the cases cited where a joint tenancy was held not to have been created, the evidence was insufficient to show any intention to give to the party whose name was added any present beneficial interest in the fund. This is equally true in the instant case. The most favorable construction, so far as the appellant is concerned, that can be placed upon the bank cashier's testimony is that the decedent, for his own convenience, wished her to have the power to draw money from his account during his lifetime and after his death. Even this interpretation fails to prove that appellant ever had any title to the fund; the case of Flanagan v. Nash, supra, is absolutely determinative of that point. We there said: "The statement in the bank books that either might draw, or the survivor might draw, does not at all establish a title as owner in the defendant. It is a mere right to draw the money that is conferred. There is nothing to show that if the defendant drew the money he could keep it as his own, and without such words no title by way of gift could pass." These words apply to the facts of the instant case; here, as there, all that was given was a mere right or power to draw money. This of itself does not evidence an intention to make a present gift of any part of the fund.

It is contended that this deficiency would have been supplied had appellant been permitted to testify as stated in her offer. An examination of the offer demon-

strates that this is not so. The facts to which appellant offered to testify—that she was present at the time her name was added to the bank book, that this was done at her father's direction and request, and that after his death she could withdraw the money—went no further than the testimony of the cashier. The only other feature of the offer—that her name was added "so she could withdraw money at any time so it could be hers"—is on its face a mere statement of the conclusion drawn by the witness from the facts, and not a recollected narrative of the transaction at the bank. The only factual matter contained in the offer was that the father had ordered the addition of her name to the account, with the power of withdrawal; the rest of the offer referred to testimony as to what appellant thought was the reason for the change. Of course, this is far from showing that her father had any such motive, and what appellant supposed his motive was is entirely irrelevant. On no ground can such testimony be considered admissible. Stripped of this element, the offer is merely cumulative to the testimony of the cashier, the only other living witness to the transaction; as we have seen, his testimony clearly shows that the father desired only that she should have the power to draw for his convenience. The relevant part of her offer, together with the testimony of the cashier, fell far short of being sufficient to make out appellant's claim of ownership.

However, it appears from the record that $3,813.03 (made up of two items amounting to $1,130.03 and $2,-683) was deposited in the account by appellant. It is admitted that this money was received by her as administratrix of a deceased brother's estate. Since it is conceded that only $1,743.92 was withdrawn by her from the account between the time her name was added and her father's death, it would seem that at least $2,069.11 of the sum deposited by her as administratrix was still in the account at the time she closed it. And it does not appear whether the $1,743.92 was withdrawn by her for

her father, or for her use as administratrix from money so deposited. It may well be that the total amount received by her as administratrix is still included; there is nothing in the record to show the contrary. The case must therefore be remanded to determine the amount, if any, which belonged to appellant, as administratrix or otherwise. Clearly, if the money she deposited was not the property of her father, and is in the amount she has been surcharged, she should not be compelled to return it.

The decree of the court below is modified by deducting from the amount surcharged against appellant the sum of $3,813.03; as so modified it is affirmed, and the case is remanded to the court below for further proceedings to determine the title to said $3,813,03 and to enter a decree accordingly; costs of this appeal to be paid by appellant.