Bohn, Appellant, *v.* Fund of $1230.10.

Argued March 30, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*D. Arthur Magaziner,* with him *Richard A. Sprague* and *Sterling, Magaziner, Stern & Levy,* for appellant.

*Russell C. Gourley,* for appellee.

OPINION BY WOODSIDE, J., July 21, 1955:

This appeal arises out of a dispute over the disposition of a balance of $1230.10 remaining in an account

in the Burton C. Simon Savings and Loan Association in the name of Dymitri Czuper and Irma E. Williams. After Czuper died, Irma E. Williams, since married and now known as Irma E. Bohn, filed a complaint against the association, claiming that the entire balance on deposit belonged to her.

The association, having been advised of a claim by the administrator of the estate of Dymitri Czuper, filed a petition for interpleader upon the basis of which the court ordered the association to pay the $1230.10 to the Clerk of the Courts of Philadelphia County. The administrator of Czuper's estate subsequently filed a complaint as alternate plaintiff, contending that all or most of the fund was the property of the said Dymitri Czuper, and that his estate should share in the proceeds of the fund. Accordingly, Mrs. Bohn and the administrator became plaintiffs in the alternative against the fund.

At the time the account was set up both parties signed a signature card with the understanding that withdrawals were subject to the signature of both parties, and, in fact, all withdrawals were so made.

Four deposits were made in the account: the first on June 10, 1949 in the amount of $1800, the source of which does not appear from the evidence; the second on October 7, 1949 in the amount of $1375, and the third on June 11, 1950 in the amount of $166, the latter two being made by Mrs. Bohn out of her own funds; and the fourth on October 31, 1950 in the amount of $1000, the source of which does not appear from the evidence. Each of four withdrawals made from the account was signed by both parties.

At the trial before a jury Mrs. Bohn offered to prove that all funds deposited in the account were "entirely her own money and belonged to no one else." She further offered to show that no gifts of said funds

or any part thereof were made to Dymitri Czuper, and that her purpose in setting up the account was to lay aside enough money to open a launderette in which she intended to employ Czuper. There was a further offer to prove by her testimony duress, coercion, and threats as the cause for her putting Czuper's name on the account.

The court refused to permit her to testify as to these matters on the ground that the Act of May 23, 1887, P. L. 158, Section 5, 28 PS §322, commonly known as the "Dead Man's Statute" made her testimony inadmissible.

After Czuper's administrator rested without presenting any affirmative testimony, the trial court directed the jury to find that one-half of the fund belonged to Irma E. Williams (now Irma E. Bohn), and one-half of the fund belonged to the estate of Dymitri Czuper. From the refusal of the lower court to enter judgment n.o.v. and grant a new trial, and its entry of judgment on the verdict, Mrs. Bohn has appealed.

It is her contention that the Act of 1887 is not applicable and that she was competent to testify with regard to her ownership of the moneys deposited in the account. The said Act (Section 5, cl. (e), 28 PS §322) provides in part, as follows:

"Nor, where any party to a thing or contract in action is dead . . . and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract, or any other person whose interest shall be adverse to the said right of such deceased . . . party, be a competent witness to any matter occurring before the death of said party . . ."

The lower court was correct in excluding Mrs. Bohn's testimony. She is a surviving party to a

"thing", to wit, the bank account in question. The outcome of this suit determines whether she or the administrator of the deceased's estate acquires the funds in the account. The judgment herein is therefore determinative of the rights of Czuper's Estate in this case —"A disqualifying interest is one which the judgment in the case would operate on (citing cases)." *Gildner v. F.N.B. & T. Co.,* 342 Pa. 145, 159, 19 A. 2d 910 (1941).

Whatever appellant recovers she will do so at the expense of the administrator of the estate, or vice versa. Accordingly, the plaintiff's interest is adverse to that of the administrator. As was indicated in *Billow v. Billow, Liquidator,* 360 Pa. 343, 346, 61 A. 2d 817 (1948) "To render a witness incompetent under the Act of 1887 it is not enough that he be a surviving or remaining party to the contract, but, in addition, his interest must be adverse to that of the deceased; it is the existence or the non-existence of the adverse interest that is the test of his competency:" (citing cases).

In *Flanagan v. Nash,* 185 Pa. 41, 43, 39 A. 818 (1898) the court in holding that a survivor claiming money on deposit in a bank could not testify said: "It is only necessary to determine the precise relation of the parties to the action in order to decide this question. The plaintiff is the administrator of Bridget Gallagher, and the defendant is the claimant to the fund in question. The title of the decedent to the money has passed to her administrator by an act of the law, and he represents her interests in the subject in controversy. He, as her representative, claims the money in controversy as belonging to her estate, and the defendant claims the same money as his own property. As a matter of course these claims are antagonistic and adverse."

The appellant argues that this being an interpleader action both parties are plaintiffs proceeding against the fund rather than against each other. Though technically accurate, this argument is factually unrealistic. As in *Flanagan v. Nash,* supra, we are here concerned with two parties having adverse interests contesting their rights to a fund. Therefore, the testimony of the living adverse party as to occurrences prior to the time of the deceased's death is not admissible under the Statute.

It is also argued by the appellant that the burden of proof was actually upon the administrator to show that the deceased had been the recipient of a gift, and that evidence other than the mere establishment of a joint account is required on behalf of the estate before it can be awarded any part of the fund.

The appellant cites as authority for this proposition the cases of *Flanagan v. Nash,* supra; *Zellner's Estate,* 316 Pa. 202, 172 A. 715 (1934); *Grady v. Sheehan,* 256 Pa. 377, 100 A. 950 (1917); *Mader v. Stemler,* 319 Pa. 374, 179 A. 719 (1935); and *Furjanick Estate,* 375 Pa. 484, 100 A. 2d 85 (1953); and others. All of these cases stand for the proposition that the fund on deposit belongs to the party whose money was deposited in the account, unless the other party can prove a gift. In each of these cases the evidence established that the funds on deposit initially belonged to the decedent who had transferred the account to the name of both parties. In each the surviving party was attempting to prove his right to the entire fund as a gift inter vivos on the part of the deceased. In these cases the burden of proof was upon the surviving party. Here the appellant was not able to produce *competent* testimony that she contributed all the funds in the account.

Thus, the argument of appellant assumes one of the facts herein at issue, to wit, the original source of the funds. Although there is evidence that part of the money placed in the account was the appellant's, there is no evidence from whom the balance came. We therefore have testimony indicating only the existence of a fund in the names of two parties, which could be withdrawn only upon the signature of both. Since the parties are not husband and wife, it is the policy of a law to favor tenancy in common rather than joint tenancy, in the absence of proof of intent that the latter should be formed. Accordingly, the parties herein must be deemed to hold the account as tenants in common.

It is further well established that tenants in common are presumed to hold equal shares in the property, and this presumption stands until it is rebutted by competent evidence: *Weist v. Grant*, 71 Pa. 95, 99 (1872) ; *Edwards v. Edwards*, 39 Pa. 369, 385 (1861). The evidence was sufficient to raise the presumption that the parties were tenants in common in the fund, and that their shares therein were equal. The plaintiff appellant was not able to adduce sufficient testimony to overcome the presumption that the parties held equal shares.

When this account was set up, irrespective of whose money went into it, a new estate was created and it required the signatures of both parties to withdraw funds therefrom. In this respect the case differs from the cases of *Flanagan v. Nash*, supra; *Tearpoak v. Tearpoak*, 85 Pa. Superior Ct. 470 (1925) ; *In re: Estate of I. L. Crist*, 106 Pa. Superior Ct. 571, 162 A. 478 (1932) ; *In re: Estate of Eliza Gallagher, Dec'd.*, 109 Pa. Superior Ct. 304, 167 A. 476 (1933) and *Romig v. Denkel et al., Exec.*, 326 Pa. 419, 192 A. 657 (1937). In all of these cases *either* person in whose name the

account stood could withdraw the entire sum, and it was held that the one who placed the money in the account thus never parted with his title.

In *Flanagan v. Nash,* supra, p. 44, 45 the court said:

"The only remaining question is whether the defendant has any title to the money by way of gift. The difficulty in the way of the defendant's contention in this regard is, that the decedent never parted with her title in her lifetime, and hence there was no delivery of the subject of the alleged gift. *She had the right to draw out the whole* of the money up to the moment of her death, and *for that reason she still held her title* to the money. It never passed away from her while she lived, and *therefore, there was no delivery.*" (Emphasis added)

In the case before us, withdrawals could be made only on *both* signatures; both parties signed a card with that understanding, and both continued to act upon that understanding by both signing all withdrawals. Even assuming all the money remaining in the account at Czuper's death was placed there by the appellant, the signing of the card and the understanding of the parties as to the requirement of the signatures of both would be prima facie evidence of the creation of a tenancy in common, although parol evidence otherwise competent would be admissible to show otherwise. *Furjanick Estate,* supra. A gift inter vivos may even be made by oral direction to the bank. *Blose Estate,* 374 Pa. 100, 97 A. 2d 358 (1953).

With the exception of the signature cards signed by both parties, the understanding that there could be no withdrawal without the signature of both, and the fact that two of the four deposits were made by appellant out of her own funds, there is no evidence to indicate the respective rights of the adverse parties in the account.

Czuper is dead and the plaintiff appellant's lips are sealed by statute. The lower court was correct in not allowing the jury to speculate upon the rights of the parties in the fund.

Judgment affirmed.